724 F.2d 717
 Leda Faye FULLER, individually and as Administratrix of the
Estate of Thomas Richard Fuller, Deceased, and as natural
guardian and next friend of Thomas Richard Fuller, Jr.,
Christine Darlene Fuller and April Dawn Fuller, Appellant,
v.
Stephen A. MARX, individually, and as State Medical
Examiner, Appellee.
 No. 83-1274.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 16, 1983.
Decided Jan. 13, 1984.
 
 A. Wayne Davis, R. David Lewis, Little Rock, Ark., for appellant.
 Laura A. Hensley, Friday, Eldredge & Clark, Steve Clark, Atty. Gen. by Robert L. Waldrum, Asst. Atty. Gen., Little Rock, Ark., for Appellee.
 Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and COLLINSON, Senior District Judge.*
 HENLEY, Senior Circuit Judge.
 
 
 1
 In September, 1978 the husband of plaintiff-appellant Leda Faye Fuller, Thomas Richard Fuller, died while imprisoned at the Cummins Unit of the Arkansas Department of Correction. The defendant, Dr. Stephen A. Marx, was the state medical examiner at the time. He performed an autopsy, and concluded that Fuller died of myocarditis, or heart failure. The body, except for the organs Dr. Marx examined during the autopsy, was returned to Fuller's family for burial; the organs were separately disposed of. A year later the body was exhumed and a second autopsy was performed by other doctors. Those doctors concluded that Fuller had been strangled. An investigation showed that shortly before his death, Fuller had been engaged in "horseplay" with a guard, during which the guard held Fuller in a headlock. Mrs. Fuller received some $40,000.00 in compensation from the State for Fuller's wrongful death.
 
 
 2
 In this action, commenced in September, 1980, Mrs. Fuller and her children have sued Dr. Marx and his insurer. The original complaint alleged that Dr. Marx had negligently performed the autopsy and that he had disposed of Fuller's bodily organs in violation of Mrs. Fuller's constitutional rights. Mrs. Fuller later amended her complaint to add allegations that Dr. Marx had intentionally misstated the cause of Fuller's death in an attempt to "cover up" the incident. The district court[1] dismissed all three counts, and Mrs. Fuller appeals.
 
 
 3
 1. Negligence.
 
 
 4
 The district court dismissed this count because Mrs. Fuller alleged only emotional distress caused by the negligent autopsy. Under Arkansas law, damages for emotional distress caused by negligence are not recoverable unless accompanied by physical injury.
 
 
 5
 The Arkansas Supreme Court has allowed recovery for emotional harm unaccompanied by physical harm only when the emotional harm was caused by willful or intentional misconduct. MBM Co., Inc. v. Counce, 268 Ark. 269, 596 S.W.2d 681 (1980). The Counce opinion strongly implies that damages are not available when the emotional harm is caused by mere negligence. See id. 596 S.W.2d at 687. The district court so interpreted Counce, and we cannot say that interpretation is unreasonable. Therefore, we affirm the district court's dismissal of this count.
 
 
 6
 2. Destruction of organs.
 
 
 7
 Mrs. Fuller contends that Dr. Marx violated her constitutional rights by not returning her husband's organs to the dead body after the autopsy. 42 U.S.C. Sec. 1983. It appears that it was the policy of the Medical Examiner's office to either incinerate organs after an autopsy or provide the organs to medical students. While there is some dispute over Dr. Marx's role in disposing of the organs, we assume for purposes of this appeal that they were disposed of at his direction. She argues that she had a property right in her husband's body and that she had a first amendment right to bury her husband in a manner consistent with her religious beliefs. The district court found that Mrs. Fuller had no constitutionally protected property interest in her husband's dead body. The court also concluded that had Mrs. Fuller complied with an Arkansas statute, she could have recovered her husband's organs, and that the statute was not unconstitutional. The court found no infringement of Mrs. Fuller's first amendment rights.
 
 
 8
 Under Arkansas law, the next of kin does have a quasi-property right in a dead body. See Teasley v. Thompson, 204 Ark. 959, 165 S.W.2d 940, 942 (1942). Mrs. Fuller received the body in what appeared to be acceptable condition. We know of no Arkansas cases which extend this quasi-property right to all of the body's organs, and in any event we note that under Arkansas law Mrs. Fuller could have taken possession of her husband's organs if she had made a written request. Ark.Stat.Ann. Sec. 82-434 provides in pertinent part that "[a]ny physician removing ... any tissue of the human body may ... authorize disposition of the same by incineration, cremation, burial or other sanitary method ... unless he shall have been furnished prior to removal or acquisition of the tissue, or at any time prior to its disposal, a written request that the same be delivered ... to the person claiming the dead body for burial." Mrs. Fuller did not at any time make a written request for her husband's organs.[2] Any quasi-property rights Mrs. Fuller had in her husband's internal organs, if protected by the Constitution, were also protected by the Arkansas statute. Mrs. Fuller could have assured the return of the organs by complying with Arkansas law. The statute is a reasonable one providing simple and adequate process. Thus, we find no unconstitutional invasion of any property right.
 
 
 9
 Nor does Mrs. Fuller's first amendment argument have merit. We do not question the sincerity of Mrs. Fuller's religious belief that in order to provide a decent Christian burial the organs as well as the body must be buried. We do not agree, however, that she was hindered in the free exercise of this belief. Arkansas law, as discussed above, requires physicians to safely dispose of bodily organs after autopsies. Ark.Stat.Ann. Sec. 82-434. This law is a reasonable way to protect public health. Religious beliefs such as Mrs. Fuller's are accommodated by the provision which allows anyone claiming a body to also claim the body's organs if a written request is made. No religious test is required as a condition for retrieval of the organs. We consider the statute to be a reasonable limit on first amendment rights, and find no violation of or interference with Mrs. Fuller's right to freely exercise her religious beliefs.
 
 
 10
 3. The cover-up.
 
 
 11
 In November, 1982, some four years after Fuller's death and two years after the original complaint was filed, Mrs. Fuller sought to amend her complaint to add a count of intentional infliction of emotional harm. Mrs. Fuller alleged that Dr. Marx intentionally misstated the cause of Fuller's death in an attempt to shield the Department of Correction from liability and bad publicity. The district court granted Mrs. Fuller leave to amend. However, the court found that the amended complaint did not relate back to the date of the original complaint under Fed.R.Civ.P. 15(c), and dismissed it as outside the statute of limitations.
 
 
 12
 The amended complaint was clearly filed after the statute of limitations expired,[3] so unless the amended complaint relates back under Rule 15(c), it is time-barred.
 
 
 13
 Rule 15(c) provides in pertinent part that "[w]henever the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Thus, the question is whether the cover-up claim arose out of the same "conduct, transaction, or occurrence" as the negligence claim.
 
 
 14
 The district court held that the original complaint concerned only the performance of the autopsy, and that this was a separate event from the cover-up alleged in the amended complaint. This is a very close question. Clearly, whether Dr. Marx reached an incorrect result would be relevant to both claims, and, as to the performance of the autopsy, the only substantial change in the amended complaint relates to Dr. Marx's state of mind. On the other hand, the amended complaint would have expanded significantly the scope of this litigation. Events and conversations occurring before and after the autopsy, having nothing to do with the negligence question of whether Dr. Marx met the appropriate standard of care in conducting the autopsy, would have been brought into play; among these newly relevant facts would be the circumstances of Fuller's death, Dr. Marx's motive, and the involvement of other state and county employees, to name a few.
 
 
 15
 Tipping the balance in favor of Dr. Marx is the lack of notice to Dr. Marx of the cover-up theory and the significant degree of prejudice which would result from allowing the relation-back. Rule 15(c) is designed to allow the addition of new claims only if there is no unfair surprise or prejudice. Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240, 1259 n. 29 (9th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983); Rosenberg v. Martin, 478 F.2d 520, 526 (2d Cir.), cert. denied, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973). The rule does not contemplate depriving defendants of the protection of the statute of limitations. Santana v. Holiday Inns, Inc., 686 F.2d 736, 739 (9th Cir.1982); 3 Moore's Federal Practice p 15.15 at 15-190 (1983). In this case, there is nothing in the original complaint indicating that Mrs. Fuller was concerned with Dr. Marx's motives or his conduct before or after the autopsy. Nor were we able to find more than a hint of such interest elsewhere in the record. During his deposition, Dr. Marx was questioned generally about the conversations he had before and after the autopsy and about the kind of pressure put on him to issue a report. But in this case, those questions hardly qualify as notice. Dr. Marx was not deposed until August, 1982, over three and one-half years after the autopsy and only three months before the amended complaint was filed. Further, the questions were general and were not directed towards whether there was a cover-up. Rather, they were aimed at discovering what facts Dr. Marx had before him when he performed the autopsy and later when he determined the cause of death; thus, the questions were directed towards whether the autopsy was thorough enough, i.e., whether Dr. Marx met the appropriate standard of care, a negligence question.[4] Further it is clear from Mrs. Fuller's witness list that the cover-up allegations would require substantial discovery and investigation; one-third of the witnesses listed were to testify only to the cover-up issue.[5] Over four years have passed since the first autopsy. The effects of the passage of time, which include faulty memories and missing witnesses, are particularly severe in this case, where former prison inmates would have to be located and conversations held four years ago would have to be somehow remembered.[6] Thus, we find no fault with the district court's ruling that the amended complaint would not relate back.
 
 
 16
 In view of our decision on the issues discussed above, we need not reach Mrs. Fuller's other claims of error.
 
 
 17
 We find no error of law or fact, and therefore affirm the judgment of the district court.
 
 
 
 *
 The Honorable William R. Collinson, United States Senior District Judge, Eastern and Western Districts of Missouri, sitting by designation
 
 
 [1]
 The Honorable Elsijane T. Roy, United States District Judge, Eastern and Western Districts of Arkansas
 
 
 [2]
 There is some evidence that her attorney made an oral request that "all the evidence be preserved." This was clearly insufficient to comply with the statute
 
 
 [3]
 This is true whether the applicable statute is Ark.Stat.Ann. Sec. 34-2616, the two-year medical malpractice statute, or Ark.Stat.Ann. Sec. 37-206, the three-year statute applicable to torts and generally to violations of 42 U.S.C. Sec. 1983. See Garmon v. Foust, 668 F.2d 400 (8th Cir.1982), and cases therein cited
 
 
 [4]
 In his deposition, Dr. Robert Stein, who conducted the second autopsy, stated that Fuller's carotid arteries, which showed Fuller had been strangled, had not been examined in the first autopsy
 
 
 [5]
 The witness list was prepared before dismissal of the negligence claim. The other witnesses were to testify on the standard of care and damages
 
 
 [6]
 Mrs. Fuller argues that Dr. Marx had access to the Arkansas Attorney General's records of the investigation in this case, and therefore there is no prejudice. Even assuming Dr. Marx does have access to those investigative files, there is nothing which shows that the Attorney General looked into the question of whether there was a cover-up and whether Dr. Marx was involved in it. We are unwilling to find a lack of prejudice from such flimsy assertions. Further, the existence of the Attorney General's records does not alter the fact that Dr. Marx had no notice of the cover-up claim