Dwayne ARNAUD and Ellen Arnaud,
Plaintiffs–Appellants,

v.

Charles B. ODOM, Jr.,
Defendant–Appellee.

Mary Ann TOLLIVER and Paul Felix,
Plaintiffs–Appellants,

v.

Charles B. ODOM, Jr. and Robert B.
Thompson, Defendants–Appellees.

Nos. 88–4053, 88–4099.

United States Court of Appeals,
Fifth Circuit.

April 19, 1989.

J. Minos Simon, Lafayette, La., for Dwayne and Ellen Arnaud.

Elwood Clement Stevens, Kleinpeter, Schwartzberg & Stevens, Morgan City, La., for Mary Ann Tolliver and Paul Felix.

Timothy J. McNamara, Richard J. Petre, Jr., Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, La., for Charles B. Odom, Jr.

James R. Shelton, Lafayette, La., for Thompson.

Before BROWN, JOHNSON, and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

In the instant two appeals, the plaintiff parents of two deceased infant children assert deprivations by the State of Louisiana of constitutional property and liberty interests in the bodies of their dead children pursuant to 42 U.S.C. § 1983. The district court dismissed the claims of both the parents of Christina Arnaud and the parents of Kendall Felix for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). Persuaded that available state post-deprivation remedies exist which satisfy constitutional procedural due process concerns for any deprivations of property or liberty interests suffered by the parents in the instant appeals, we affirm the district court. Further, in so affirming, we decline to create from the substantive parameters of the due process clause a liberty interest in next of kin to be free from state-occasioned mutilation of the body of a deceased relative and to possess the body for burial in the same condition in which death left the body.

## I. FACTS AND PROCEDURAL HISTORY

The instant appeals stem from a tragic and disturbing sequence of events beginning in October and December of 1986 with the deaths of two infants, Kendall Felix and Christina Arnaud, in their sleep from Sudden Infant Death Syndrome (S.I.D.S.), commonly referred to as crib death. Pursuant to Louisiana law, when an infant under the age of one year dies unexpectedly and without explanation, local authorities are required to secure the corpse of the infant for a mandatory autopsy. La.Rev. Stat.Ann. § 33:1563(C) (West 1988). Accordingly, immediately following their deaths from S.I.D.S., the bodies of Kendall and Christina were delivered to defendant Dr. Charles Odom, the Deputy Coroner of the Parish of Lafayette, Louisiana, so that Dr. Odom could perform the mandatory autopsies on the bodies of the infants.

At this point, some background information regarding Dr. Odom is necessary to fully understand the subsequent actions of Dr. Odom in performing the autopsies on Kendall and Christina. Dr. Odom, prior to serving as Deputy Coroner for Lafayette Parish, served as the Chief Medical Examiner for the City and County of Honolulu, Hawaii. In his capacity as Chief Medical Examiner in Honolulu, Dr. Odom performed an autopsy on the corpse of an infant reportedly dropped on his head by his father. After conducting the autopsy,

Dr. Odom concluded that the father accidently dropped the infant on his head; however, another forensic pathologist determined that the infant died of intentional abuse. As a result of this disagreement between the pathologists on the cause of the death of the infant, Hawaiian authorities commenced a grand jury investigation to ascertain the actual cause of death of the infant—accidental dropping or intentional abuse. In this connection, Dr. Odom anticipated providing expert testimony to the grand jury relating to whether a fall by an infant from a height of one meter, while causing no external injuries, is sufficient to cause a fracture of the skull.

Prior to providing the above testimony in the Hawaii criminal investigation, however, Dr. Odom assumed the position of Deputy Coroner of Lafayette Parish. It was in his position as Deputy Coroner of Lafayette Parish that Dr. Odom, in an effort to gather empirical data to support his expert opinion at the grand jury proceedings in Hawaii, performed the grisly controlled experiments on the bodies of Kendall Felix and Christina Arnaud following their deaths from S.I.D.S. which form the basis of the instant appeals. These experiments conducted by Dr. Odom consisted of taking the corpse of the infant to the rear of the laboratory and, holding the corpse by the feet, dropping the corpse head-first from a predetermined height of one meter onto a surface of virtually smooth concrete. Dr. Odom would then x-ray the skull of the infant and record the results. Thereafter, Dr. Odom performed the mandatory autopsy.

The above experiments on the bodies of Kendall and Christina were not conducted simultaneously, but were performed in October and December of 1986 respectively following the deaths of the infants. The final of the two experiments conducted by Dr. Odom occurred on December 22, 1986, on the body of Christina Arnaud. In both the instance of Kendall and Christina, the body of the infant was returned to the parents promptly following the experiment and autopsy procedure. Apparently, the parents, while noticing the disfigurement in the bodies of the children resulting from Dr. Odom's experiments, did not immediately become aware of the deviant actions of Dr. Odom.

Four days after Dr. Odom conducted his experiment on the corpse of Christina, on December 26, 1986, an employee of the Lafayette Parish Coroner's Office informed the Coroner of Lafayette Parish, Dr. Robert Thompson, of the experiments by Dr. Odom on the bodies of the infants. Immediately upon learning of this aberrant behavior by Dr. Odom, Dr. Thompson suspended Dr. Odom from his duties as Deputy Coroner and further instructed Dr. Odom to vacate his office at the Lafayette Parish Forensic Laboratory. Dr. Thompson subsequently referred the matter to the Lafayette Parish District Attorney's Office for possible criminal proceedings against Dr. Odom. In so informing the District Attorney of Dr. Odom's actions, Dr. Thompson characterized the conduct of Dr. Odom as "highly unprofessional, repulsive, and debasing."

Approximately two months later, in February 1987, Dr. Thompson informed the parents of Christina, Dwayne and Teresa Arnaud, and the parents of Kendall, Mary Tolliver and Paul Felix, of the experiments of Dr. Odom. Thereafter, in separate actions, the Arnauds and Tolliver and Felix filed the instant suits against Dr. Odom pursuant to 42 U.S.C. § 1983 seeking damages for the unauthorized medical experimentation by Dr. Odom on the corpses of their infant children. In addition to suing Dr. Odom, Tolliver and Felix also named as defendants in their action, Dr. Thompson and Lafayette Parish.

The section 1983 complaints of the Arnauds and Tolliver and Felix are in most respects similar but do differ slightly in the theory of recovery asserted in the complaints. In their complaint, the Arnauds assert a deprivation without procedural due process of a constitutional property or liberty interest in the body of their child after death created primarily by virtue of Louisiana state law. Similarly, Tolliver and Felix allege a deprivation of a constitutionally protected liberty or privacy interest in the body of their child after death; however,

Tolliver and Felix maintain that such a liberty or privacy interest is created by the substantive parameters of the due process clause in the Constitution. Thus, Tolliver and Felix assert a deprivation of substantive, not procedural, due process. Nevertheless, the parents in both complaints are alleging constitutional deprivations of virtually the identical interest—that interest being the right to possess the body of one's next of kin in the same condition as death left that body, free from unwarranted state-occasioned mutilation. The parents are, however, asserting different sources of authority from which such an interest is derived.

Thereafter, the same district court presided over both of the instant cases and recognized that both actions, despite their differences regarding a theory of recovery, involved the same threshold issue of whether or not the parents enjoyed constitutionally protected interests in the bodies of their deceased infants. Accordingly, the district court ordered briefing on the above constitutional issue. After considering the briefs of the parties on this issue, the district court, in separate orders, dismissed the claims of the Arnauds and Tolliver and Felix pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. In doing so, the district court concluded that the parents had failed to establish a constitutionally protected interest in the bodies of their dead infants. The Arnauds and Tolliver and Felix now appeal the orders of the district court. Because of the factual and legal similarity of the two appeals, we address both of them jointly in this opinion.

## II. DISCUSSION

This Court has previously enunciated the necessary criteria which a plaintiff must set forth in a complaint to state a claim upon which relief may be granted under section 1983 as follows:

> To survive a motion to dismiss [pursuant to Rule 12(b)(6) ], a pleading that raises a section 1983 claim must allege both that someone violated a right that the Constitution or laws of the United States se-

cures and that the offender did so under color of state law.

*Auster Oil & Gas, Inc., v. Stream,* 764 F.2d 381, 386–87 (5th Cir.1985), *cert. dismissed,* — U.S. —, 108 S.Ct. 2007, 100 L.Ed.2d 237 (1988). "A district court should refrain from granting a motion to dismiss pursuant to Rule 12(b)(6) unless it appears, from a reading of the plaintiff's complaint, that the plaintiff has failed to set forth facts which, if proven, would establish a violation of a constitutional right." *Sisk v. Levings,* 868 F.2d 159, 161 (5th Cir.1989). A plaintiff may not, however, plead merely conclusory allegations to successfully state a section 1983 claim, but must instead set forth specific facts which, if proven, would warrant the relief sought. *Id. See Elliott v. Perez,* 751 F.2d 1472, 1479 (5th Cir.1985).

Section 1983 provides a remedy for the deprivation of rights "secured by the Constitution and laws" of the United States by persons acting under color of state law. 42 U.S.C. § 1983. In both of the instant appeals, the parties do not contest the ruling of the district court that Dr. Odom was acting under color of state law in conducting the gruesome experiments on the bodies of Kendall and Christina. Rather, the threshold issue on appeal which this Court must resolve is whether the parents of Kendall and Christina have been deprived of a right secured by the Constitution and laws of the United States within the context of section 1983. *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). *See Duncan v. Poythress,* 657 F.2d 691, 700 (5th Cir.1981), *cert. dismissed,* 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982).

### A. *Procedural Due Process*

As noted previously, the Arnauds contend that the actions of Dr. Odom, in performing the unauthorized experiment on the body of their infant daughter Christina during the autopsy procedure, constituted a deprivation without procedural due process of a constitutional property or liberty interest in the body of their child after death. Initially, it is noted that "property" rights protected by section 1983, such as those

asserted by the Arnauds in the instant case, are not created by the Constitution, but are established and created by state law. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). "Liberty" interests, on the other hand, arise from two sources—state law and the Due Process Clause of the Constitution. *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983).

■ In the instant case, the Arnauds maintain that, by virtue of Louisiana statutory and case law, Louisiana has created in the next of kin of a deceased individual the following constitutionally protected property rights: "the right to possess the body in the same condition in which death left it; the right to control the disposition of the remains; and the right to enjoin disinterment of the deceased." In asserting possession of the above property rights, the Arnauds rely in part on La.Rev.Stat.Ann. § 8:655 (West 1986) which provides in pertinent part:

The right to control the disposition of the remains of a deceased person, ... vests in and devolves upon the following in the order named:

.     .     .     .     .

(3) The surviving parents of the decedent.[1]

As a further source of their property interests, the Arnauds cite to Louisiana jurisprudence in this area which the Arnauds maintain recognizes a "quasi-property right in the nearest relative or next of kin of the deceased, said right being predicated on the universally recognized duty of relatives to bury their dead, which duty involves the right to possession and custody of the body for purposes of burial ... in the same condition that existed at the moment life departed." *Blanchard v. Brawley*, 75 So. 2d 891, 893 (La.App. 1st Cir.1954). After considering the relevant Louisiana statutory and case law regarding the rights of next of kin in the body of a deceased relative, we conclude that Louisiana has indeed established a "quasi-property" right of survivors in the remains of their deceased relatives.

This Court, however, has previously recognized that federal constitutional due process concerns may be satisfied by existing state tort remedies where negligent, episodic deprivations of property rights by state officials occur. *Rutherford v. United States*, 702 F.2d 580, 583 (5th Cir.1983). *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). Even so, in *Rutherford*, this Court stated that:

"[A] critical prerequisite to a determination under *Parratt* that existing postdeprivation remedies are sufficient to satisfy the requirements of due process is an ascertainment of congruity between the substantive interests asserted by the plaintiff and the interest protected by the existing remedial scheme. Remedies not responsive to the range of intangible interests claimed to be injured are not meaningful in an analysis of the adequacy of process provided."

---

1. In its entirety, La.Rev.Stat.Ann. § 8:655 provides that:

**§ 655. Right of disposing of remains**
The right to control the disposition of the remains of a deceased person, unless other directions have been given by the decedent, vests in and devolves upon the following in the order named:
(1) The surviving spouse, if not judicially separated from the decedent;
(2) The surviving children of the decedent;
(3) The surviving parents of the decedent;
(4) The surviving brothers and sisters of the decedent.
Further, La.Rev.Stat.Ann. § 8:659 provides in part:

**§ 659. Permission to remove remains**
The remains of a deceased person may be removed from a cemetery space with the consent of the cemetery authority and the written consent of one of the following, in the order named, unless other directions have been given by the decedent:
(1) The surviving spouse, if not judicially separated from the decedent;
(2) The surviving children of the decedent;
(3) The surviving parents of the decedent;
(4) The surviving brothers and sisters of the decedent.

*Rutherford,* 702 F.2d at 583. The *Rutherford* Court concluded that, where a federal tax agent harassed taxpayers in assessing their taxes, the plaintiff taxpayers were asserting a deprivation of a substantive liberty interest which could not be adequately remedied by statutory procedures provided by the government for obtaining a tax refund. Specifically, the refund procedures did not allow recovery by the taxpayers for their mental anguish and legal fees as a result of the agent's abusive activities.

■ Thus, in the instant case, having recognized the existence of a "quasi-property" right possessed by the Arnauds in the body of their infant daughter Christina by virtue of state law, our inquiry now becomes whether the state post-deprivation tort claims adequately remedy the essential aspects of the property interests alleged by the Arnauds to have been deprived by the actions of Dr. Odom in the instant appeal.

Utilizing an analysis similar to that outlined above, the Eighth Circuit, in *Fuller v. Marx,* 724 F.2d 717 (8th Cir.1984), addressed the adequacy of state procedures to satisfy due process concerns on facts which bear some resemblance to those of the instant case. In *Fuller,* the plaintiff, a widow, relying on a "quasi-property" right in her dead husband's body created by virtue of Arkansas case law, asserted a section 1983 action for deprivation of that property right where the coroner failed to return to her all of the body organs of her dead husband following an autopsy. The *Fuller* court, recognizing the "quasi-property" right of the widow in the body of her dead husband, nevertheless declined to find a constitutional invasion of that right occasioned by the state's removal of certain organs from the body of the widow's dead husband during the autopsy. *Fuller,* 724 F.2d at 719. The court in *Fuller* determined that "[a]ny quasi-property rights [the widow] had in her husband's internal organs, if protected by the Constitution, were also protected by [an] Arkansas statute" which allowed the widow to request the return of her husband's organs after the autopsy. *Id.*

Similar to the process available to the widow in *Fuller,* but unlike the process afforded the taxpayers in *Rutherford,* the postdeprivation process available to the movants (the Arnauds in the instant case) is responsive to the wrongs asserted in their complaint. In particular, Louisiana, by statute, allows actions to seek recovery for intentional torts. La.Civ.Code Ann. art. 2315 (West 1989). Further, Louisiana case law provides a cause of action to recover damages for the unauthorized tampering of a corpse. *French v. Oschner Clinic,* 200 So.2d 371 (La.App. 4th Cir.1967). At oral argument, counsel for the Arnauds stated that such state law claims have, in fact, been initiated against Dr. Odom. Presumably, the above state remedies will adequately redress the Arnauds for any injuries which they suffered as a result of the experiments by Dr. Odom on the body of their daughter.

■ Thus, since adequate state postdeprivation process is available to remedy the injuries asserted by the Arnauds in their complaint against Dr. Odom, we must conclude that the Arnauds have not suffered a constitutional invasion of any property right pursuant to section 1983. Moreover, because the Arnauds are asserting a deprivation of procedural due process, the above conclusion regarding the adequacy of state postdeprivation remedies is equally applicable to any alleged constitutional deprivation of a liberty interest possessed by the Arnauds in the body of their daughter. In reaching this conclusion, we note that our decision is consistent with the admonition of the Supreme Court that federal courts should refrain from "federalizing" the law of torts by making of "the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States" by "turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976); *Parratt,* 451 U.S. at 544, 101 S.Ct. at 1917.

## B. *Substantive Due Process*

In contrast to the theory of recovery asserted by the Arnauds in their section 1983 complaint, Kendall's parents, Tolliver and Felix, maintain that the actions of Dr. Odom in performing the experiment on the corpse of Kendall deprived them, not of a property interest without procedural due process, but of a liberty or privacy interest derived from the substantive parameters of the due process clause itself. In rejecting the claim of a substantive due process violation in its order of dismissal, the district court in the instant case stated that "[t]his court has found no precedent directing the court to expand the already existing parameters of the substantive content of the due process clause of the fourteenth amendment to the United States Constitution." We likewise can discern no precedent in the relevant jurisprudence which would warrant such an extension of the liberty or privacy rights derived from and protected by the Due Process Clause in the Constitution. Thus, we reject the contention of Tolliver and Felix in this regard.

■ As an initial matter, however, we recognize that the availability of state post-deprivation tort claims to Tolliver and Felix to remedy the injuries asserted by Tolliver and Felix in their complaint are not relevant to the instant substantive due process inquiry. This Circuit has confined the *Parratt* analysis employed in the previous portion of this opinion regarding the availability of state remedies to satisfy the constitutional concerns of due process to asserted violations of *procedural, not substantive, due process. Thibodeaux v. Bordelon,* 740 F.2d 329, 333 (5th Cir.1984). In this regard, this Court has declined to extend the *Parratt* rationale to "substantive constitutional proscriptions applicable to the states because of incorporation into the due process clause of the fourteenth amendment." *Id.* In the instant appeal, Tolliver and Felix are asserting a deprivation of a constitutional liberty or privacy interest in the body of their infant son derived from the enumerated rights secured by the Constitution; therefore, the availability of state postdeprivation remedies is irrelevant to an inquiry into whether the actions of Dr. Odom violated such substantive rights provided by the Constitution.

■ Thus, our focus now becomes whether, from the express rights enumerated in the Constitution, a liberty or privacy interest devolves upon an individual to be free from state-occasioned mutilation to the body of a deceased relative. We are persuaded that, despite the egregious wrong suffered by the parents at the hands of Dr. Odom in the instant case, no such liberty or privacy interest is created by the Constitution. This Court has previously stated that "[i]mplication of nontextual substantive rights from the general monitions of the due process clause is a matter not to be undertaken lightly, but only with the caution of seasoned and mature thought." *Rutherford,* 702 F.2d at 584. Due to the subjectivity inherent in any inquiry by the judiciary in this area, the definition of the substantive content of the due process clause is a task to be undertaken with great caution; it is here that judges encounter the risk of transforming their seasoned and mature thought into their own personal discernment.

In recognition of these risks, courts have refrained from creating from the substantive parameters of the due process clause a large number of liberty interests. In this regard, the Supreme Court has concluded that the due process clause protects against state transgression only those personal immunities that are "implicit in the concept of ordered liberty." *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). *See Sotto v. Wainwright,* 601 F.2d 184, 191 (5th Cir. 1979), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1597, 63 L.Ed.2d 784 (1980). In *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), the Supreme Court defined those "liberty" interests protected by the due process clause as follows:

> While this court has not attempted to define with exactness the liberty thus guaranteed [Fourteenth Amendment guarantee against deprivation of life, liberty, or property without due process of law], the term has received much consid-

eration, and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.

*Meyer*, 262 U.S. at 399, 43 S.Ct. at 626. Such liberty interests implicit within the substantive parameters of the due process clause include the right of an extended family to share a household, *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); the right of a woman to decide whether to have an abortion, *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); the freedom to marry a person of another race, *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); the right to vote, *Harper v. Virginia State Board of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); the right to use contraceptives, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); the right of access to the courts, *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); the right of association, *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); the right to send children to private schools, *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); and the right to have children instructed in foreign language, *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

Mindful of the fact that courts have infrequently recognized liberty interests derived from the substantive content of the due process clause, we decline to accept the invitation of Tolliver and Felix to embrace a new liberty interest in the instant case. As intimate as the right is of next of kin to possess the body of a loved one in the same condition as the body was at death, we are unable to extend over that right the constitutional umbrella of substantive due process on the facts of the instant case.[2] In this regard, it is observed that, by creating a quasi-property right of survivors in the body of a deceased relative and providing state tort claims to protect that right, the State of Louisiana has recognized the intimacy and sanctity of that right.

As a final matter, we note that the district court, in dismissing the complaints of the Arnauds and Tolliver and Felix, failed to specify in its orders of dismissal that any pendent state law claims are to be dismissed without prejudice. For the purpose of ensuring that the Arnauds and Tolliver and Felix encounter no hurdles of claim preclusion in their state claims arising from Dr. Odom's actions, we accordingly modify the district court's order of dismissal of any pendent state law claims possessed by the Arnauds and Tolliver and Felix to be without prejudice. For these reasons, the district court's orders of dismissal in favor of Dr. Odom, Dr. Robert Thompson, and Lafayette Parish are

AFFIRMED AND MODIFIED.

---

**2.** In a similar fashion, we are constrained to reject the contention of Tolliver and Felix that they have been deprived of a first amendment right to bury Kendall in a manner consistent with their religious beliefs by the actions of Dr. Odom. We also reject the assertion of Tolliver and Felix that they were unconstitutionally denied access to the courts as a result of an alleged conspiracy between Lafayette Parish coroner officials to conceal the actions of Dr. Odom. On the contrary, the record reveals that Dr. Thompson did everything possible to punish Dr. Odom, including initiating criminal proceedings.