**Bret TANBERG, Plaintiff,**

v.

**The WELD COUNTY SHERIFF, Defendant.**

**Civ. A. No. 91–B–248.**

United States District Court, D. Colorado.

March 18, 1992.

Lynn L. Palma, Denver, Colo., Michael Travis Isbell, Lambda Legal Defense and Educ. Fund, Inc., New York City, for plaintiff.

Thomas Lyons, Cathy H. Greer, Hall & Evans, Denver, Colo., Bruce T. Barker, Asst. County Atty., Greeley, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

### I. INTRODUCTION

This is an action filed under the Federal Rehabilitation Act (29 U.S.C. § 794 (1988)) (the Act). Federal question jurisdiction exists under 28 U.S.C. § 1331 (1980). Defendant Weld County Sheriff's Department (the Department) moves for partial summary judgment regarding compensatory damages. Plaintiff Bret Tanberg (Tanberg) moves for summary judgment on liability, to remove the use of the pseudonym, and for a protective order. I will deny the Department's motion for partial summary

judgment because compensatory damages are available for Tanberg's claim under the Act. Also, because there are disputed material facts surrounding the Department's reasons for terminating Tanberg, I will deny his motion for summary judgment. I will grant in part and deny in part Tanberg's remaining procedural motions.

Tanberg was a volunteer reserve deputy for the Department from May 1988 until he was discharged on February 16, 1990. Tanberg alleges that he was discharged because he tested positive for the Human Immunodeficiency Virus (HIV). He asserts claims against the Department under the Federal Rehabilitation Act and Colorado's anti-discrimination employment laws (§ 24–34–402 10B C.R.S. (1988 Repl.Vol.)). In addition to reinstatement and injunctive relief calling for the implementation of an AIDS education and awareness program at the Department, Tanberg seeks compensatory damages for loss of employment opportunities, emotional distress, and pain and suffering.

## II.  THE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT ON COMPENSATORY DAMAGES

The Department contends that compensatory damages are unavailable under the Act. Although the Act does not specify whether a claimant can recover compensatory damages, it provides that the remedies available under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*) (Title VI) shall be available to any person aggrieved under the Act. 29 U.S.C. § 794a(a)(2) (1978). No remedies, however, are specified under Title VI.

*Franklin v. Gwinnett County Public Schools,* — U.S. —, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) provides dispositive analysis for determining whether compensatory damages are obtainable under the Act. *Franklin* holds that compensatory damages are available to a claimant under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681—1688 (Title IX). Title IX, like the Act and Title VI, is silent as to the remedies available to a claimant.

In determining what remedies are available under Title IX, the Court began its analysis with the deeply rooted presumption that "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion", all appropriate remedies are available to a claimant unless Congress expressly indicates otherwise. *Franklin,* — U.S. at —, 112 S.Ct. at 1033. After concluding that Congress has not expressly forbidden compensatory damages in Title IX actions, the Court held that compensatory damages are available for a Title IX violation. *Franklin,* — U.S. at —, 112 S.Ct. at 1036.

Once the Court determined that compensatory damages are available under Title IX, it analyzed whether they are an appropriate remedy. Compensatory damages were held to be appropriate in *Franklin* because the sexual harassment alleged was an intentional act of discrimination under Title IX and compensatory damages are appropriate to redress intentional acts of discrimination. *Franklin,* — U.S. at —, 112 S.Ct. at 1037. The Court also noted that "[u]nder ordinary convention, the proper inquiry would be whether monetary damages provided an adequate remedy, and if not, whether equitable remedies would be appropriate." *Franklin,* — U.S. at —, 112 S.Ct. at 1038. The Court concluded that monetary damages were appropriate because the equitable remedies of backpay and prospective relief would not redress adequately the sexual harassment suffered by the plaintiff. *Franklin,* — U.S. at —, 112 S.Ct. at 1038.

■ Here, as in *Franklin,* Tanberg's claim arises under a federal statute that does not specify the relief obtainable. However, because Tanberg has a right to sue under the Act for the discrimination alleged, any appropriate remedy, including compensatory damages, is available to "make good the wrong done". *Franklin,* — U.S. at —, 112 S.Ct. at 1033. Furthermore, Congress has not expressly disallowed compensatory damages under the Act. It is thus clear that compensatory damages are not prohibited here.

■ The issue then is whether compensatory damages are an appropriate remedy in this case. I conclude that they are appropriate.

The *Franklin* Court held that compensatory damages were appropriate to redress the plaintiff's injuries because the sexual harassment alleged there was an act of intentional discrimination under Title IX. *See Franklin,* —— U.S. at ——, 112 S.Ct. at 1037. Tanberg stated at oral argument that he is prepared to prove the Department intentionally discriminated against him because of his HIV status. Consequently, as in *Franklin,* compensatory damages are obtainable if Tanberg proves intentional discrimination under the Act.

■ The adequacy of compensatory damages is also considered before appraising the sufficiency of equitable remedies. *Franklin,* —— U.S. at ——, 112 S.Ct. at 1038. Money damages would be adequate to compensate Tanberg for the alleged loss of professional opportunity, mental anguish, pain, and suffering he allegedly experienced as a result of the claimed violation of the Act.

Moreover, without limiting Tanberg to compensatory damages alone, money damages tend to redress his alleged discrimination better than the equitable remedies he seeks. At oral argument Tanberg stated that reinstatement may not be feasible because of his deteriorating physical condition. Nor is Tanberg's request that the Department implement an AIDS awareness and education program a better remedy than compensatory damages. Although such programs may be beneficial to society, any added awareness or knowledge about AIDS within the Department fostered by such an awareness program would not remedy Tanberg's claimed injuries because he no longer works for the Department. Therefore, the money damages Tanberg seeks are appropriate to redress the wrong alleged here.

Finally, allowing Tanberg to recover compensatory damages is consistent with the following 1986 amendment to the Civil Rights Act of 1964:

(1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of Section 794 of Title 29 ...

(2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (*including remedies both at law and in equity*) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

42 U.S.C. § 2000d–7 (1986) (emphasis added).

The concurring opinion in *Franklin* interprets these subsections as implicitly acknowledging that damages are available under the 1964 Civil Rights Act. *Franklin,* —— U.S. at ——, 112 S.Ct. at 1038 (Scalia, J., concurring). Because remedies under the Act are governed by this provision, it follows that compensatory damages are available here.

I conclude that because Congress has not expressly prohibited compensatory damages under the Act and because compensatory damages are an appropriate remedy to redress the intentional violation alleged here, Tanberg's claim for compensatory damages will stand. Therefore, the Department's motion for partial summary judgment is denied.

## III. TANBERG'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY

### A. *Summary judgment standards*

■ Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Where, as here, a plaintiff moves for summary judgment it bears the following burden:

If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial.... Such an affirmative showing shifts the burden of production to the

party opposing the motion and requires that party ... to produce evidentiary materials that demonstrate the existence of a "genuine fact" for trial.

*Anderson v. Department of Mental Health & Human Services,* 907 F.2d 936, 947 (10th Cir.1990) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (White, J. concurring) (emphasis in original)).

### B. *Federal Rehabilitation Act*

Tanberg asserts that there are no controverted facts and he is entitled to judgment as a matter of law on his claim under the Act and Colorado's anti-discrimination laws. To the contrary, except for the question of federal financial assistance, the Department has demonstrated that genuine issues of material fact remain for trial.

█ Under the Act it is unlawful to exclude any otherwise qualified handicapped person, as defined in 29 U.S.C. § 706(8), from participating in any program or activity receiving federal financial assistance solely because of handicap. 29 U.S.C. § 794(a). To prove a claim under the Act, a plaintiff must first show that he is otherwise qualified for the position despite his handicap but was rejected under circumstances giving rise to an inference of rejection based solely on his handicap. *Pushkin v. Regents of University of Colorado,* 658 F.2d 1372, 1387 (10th Cir.1981). Once a plaintiff satisfies this burden, a defendant has the burden of proving that the plaintiff was not an otherwise qualified handicapped person or rejection from the program for reasons other than his handicap. *Pushkin,* 658 F.2d at 1387. If a defendant satisfies this burden, then a claimant has the burden of going forward with rebuttal evidence showing that the defendant's reasons for rejecting plaintiff are based on misconceptions or unfounded factual conclusions and the reasons articulated for the rejection, other than the handicap, encompass unjustified consideration of the handicap itself. *Pushkin,* 658 F.2d at 1387.

### C. *Federal Financial Assistance*

█ The Department's contention to the contrary notwithstanding, I conclude that it receives federal financial assistance and, therefore, is subject to the Act. The Act prohibits "any program or activity receiving federal financial assistance" from discriminating against people with handicaps. 29 U.S.C. § 794(a). As a department or instrumentality of a state or local government, the Department is a program or activity under the Act. 29 U.S.C. § 794(b)(1)(A).

█ If any part of the Department receives federal financial assistance, the whole entity is deemed to be a program receiving federal financial assistance under 29 U.S.C. § 794(b). Furthermore, such federal assistance can be passed to the Department through a state or local government. 29 U.S.C. § 794(b)(1)(B). The Department's comprehensive annual financial reports show that it received federal grants from 1988 through 1990. (Don Warden Depo. at 29:6–16; 52:12–54:24.) This evidence is uncontroverted and, thus, suffices to establish as a matter of law that the Department is a program receiving federal financial assistance.

█ Furthermore, contrary to the Department's contentions, these grants are not compensation from the federal government for services rendered. If a program receives federal funds as compensation, then it is not a federally assisted program under the Act. *DeVargas v. Mason & Hanger–Silas Mason Co., Inc.,* 911 F.2d 1377, 1382 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). A program, however, is covered by the civil rights laws if the federal government intended to *subsidize* the program. *DeVargas,* 911 F.2d at 1382. Here the federal government is not purchasing law enforcement services from the Department. Rather, these grants are subsidies.

### D. *Liability*

█ The Weld County sheriff, undersheriff, and a lieutenant in the Department testified that Tanberg was discharged because he abused his position for personal

gain on three occasions and because the manner in which he disclosed his HIV condition caused disruptions within the Department. (Undersheriff Dill Depo. 97:14–100:12, 115:25–116:19.) The first incident relates to a car accident involving Tanberg. Tanberg allegedly filed a harassment complaint against the other driver and sought to use the resources of the Department to investigate the accident to exert pressure on the other driver to settle the personal injury suit. (Dill Depo. 118:19–120:10.) Second, Tanberg allegedly wore his uniform when confronting an individual about payment for a car accident. (Dill Depo. 120:11–121:24; Sheriff Jordan Depo. 58:18–61:10.) Third, Tanberg allegedly did not pay for boarding his dog at a veterinarian's office. He supposedly told the veterinarian that he was participating in an undercover operation for the Department and did not have to pay for boarding his dog. (Dill Depo. 101:25–102:6, 122:11–124:12; Jordan Depo. 19:2–20:3; Lt. Malcom Depo. 58:11–59:19.) Finally, the Department contends that Tanberg used poor judgment in revealing his HIV condition. The Department argues that this disclosure caused disruptions within the Department. (Jordan Depo. 28:1–25, 36:9–37:20; Malcom Depo. 56:8–15.)

Tanberg argues that the non-discriminatory reasons recited by the Department for his discharge are unfounded or based on misconceptions. However, at this summary judgment stage, these deposition supported reasons are sufficient to create a genuine issue as to whether Tanberg was terminated solely because of his handicap. Summary judgment is thus inappropriate on Tanberg's claim under both the Act and Colorado's anti-discrimination laws.

## IV. TANBERG'S PROCEDURAL MOTIONS

Tanberg's motion to remove the use of the pseudonym, unopposed by the Department, is granted. Additionally, he seeks a protective order preventing the Department's lawyers from contacting his relatives and personal acquaintances. The Department asserts that their testimony as to Tanberg's mental state and physical condition is relevant to the issue of compensa-

tory damages. Also, there is no evidence that the Department is harassing these prospective witnesses. Because these prospective witnesses may possess relevant, admissible information the Department may continue to contact them for proper purposes.

Tanberg's request, however, that the Department maintain confidentiality of these prospective witnesses' identities is well taken. Accordingly, Tanberg's motion for a protective order is denied to the extent it restrains the Department from contacting prospective witnesses for proper purposes. The motion for protective order is granted to the extent that the Department is restrained from revealing the identities of Tanberg's relatives, former wife, and personal acquaintances.

Accordingly, IT IS ORDERED that:

(1) The Department's February 18, 1992 motion for partial summary judgment IS DENIED;

(2) Tanberg's February 27, 1992 motion for summary judgment, superseding and replacing his February 18, 1992 motion for summary judgment, IS DENIED;

(3) Tanberg's March 13, 1992 motion to remove the use of the pseudonym IS GRANTED; and

(4) Tanberg's March 13, 1992 motion for a protective order IS DENIED IN PART AND GRANTED IN PART.