Rita **TAFOYA**, Personal Representative of Frank Tafoya, Deceased, Plaintiff,

v.

Jack **BOBROFF**, Craig O'Neil, John Does 1, 2, & 3, and Albuquerque Public School Board, Defendants.

Civ. No. 94–0310 JB.

United States District Court, D. New Mexico.

Sept. 28, 1994.

Sterling F. Black, Albuquerque, NM, for plaintiff.

Eleanor K. Bratton, Michael L. Carrico, Modrall, Sperling, Roehl, Harris & Sisk Albuquerque, NM, for defendants.

## MEMORANDUM OPINION AND ORDER

BURCIAGA, Chief Judge.

THIS MATTER is before the Court on Defendants' March 29, 1994 motion to dismiss or in the alternative for summary judgment. The Court, having reviewed the pleadings, the submissions of the parties and the relevant law, and being otherwise fully advised in the premises, finds Defendants' motion to dismiss is well taken and is granted.

In this case Plaintiff seeks compensatory damages for the wrongful death of Frank Tafoya. Plaintiff Rita Tafoya is decedent's personal representative. Defendants are the Albuquerque Public School Board ("APS"), and its Superintendent Jack Bobroff, its Security Officer Craig O'Neil, and other APS officers or employees John Does I, II, and III.

Plaintiff's decedent interviewed for the job of security officer with Defendant APS on February 14, 1992. Plaintiff alleges that decedent told Defendant O'Neil, head of the APS Security Office, of decedent's high blood pressure, diabetes, thyroid condition, and injured leg at the interview. Decedent's application showed that he was fifty-one years old, and he appeared overweight. During the interview, Defendant O'Neil required decedent and several other applicants to complete a physical agility test, including a timed 1.5–mile run around a cinder track. Near the end of the run, decedent collapsed from a cardiovascular failure, and died soon thereafter. The Office of the Medical Examiner conducted an autopsy, including alcohol and

drug screening tests, and determined the cause of death to be atherosclerotic cardio-vascular disease.

Plaintiff filed suit on December 16, 1993 in state court. Defendants removed to the United States District Court for the District of New Mexico on March 24, 1994. Plaintiff's Amended Complaint states causes of action under the New Mexico Tort Claims Act, the New Mexico Human Rights Act, the Americans With Disabilities Act, the Rehabilitation Act of 1973, the Civil Rights Act of 1991, and the United States and New Mexico Constitutions.

## I. STANDARDS FOR MOTION TO DISMISS

■ For the purposes of a motion to dismiss, this Court must accept the material allegations of the complaint as true. *Franklin v. Meredith*, 386 F.2d 958, 959 (10th Cir.1967). Dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court must construe the pleadings liberally and, if any possibility of relief exists, should not dismiss the claim. *Gas–a–Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102, 1107 (10th Cir.1973).

## II. NEGLIGENCE CLAIM UNDER THE NEW MEXICO TORT CLAIMS ACT

Section 41–4–4 of the New Mexico Tort Claims Act ("Tort Claims Act") states: "[A] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by sections 41–4–5 through 41–4–12 NMSA 1978." N.M.Stat.Ann. § 41–4–4 (Michie 1989 & Supp.1994). The parties do not dispute that Defendant APS is a governmental entity, and that Defendants Jack Bobroff, Craig O'Neil, and John Does I, II, and III, were public employees acting within the scope of duty at the time of decedent's death. Therefore, the Tort Claims Act applies to Plaintiff's negligence claim, and Defendants are immune from liability for any tort except as waived by the Act.

### A. No Waiver of Immunity under Section 41–4–6

■ Plaintiff alleges that two sections in the Tort Claims Act waive Defendants' immunity with respect to her claim. First, she alleges that Defendants' negligence "in the operation or maintenance of any building, public park, machinery, equipment or furnishings" caused decedent's death. N.M.Stat.Ann. § 41–4–6 (Michie 1989 & Supp.1994). Section 41–4–6 of the Tort Claims Act waives immunity for such negligence. *Id.* However, the facts that Plaintiff alleges simply do not fit the terms of this section as the New Mexico courts construe them. The New Mexico Supreme Court recently discussed the scope of section 41–4–6 in *Archibeque v. Moya*, 116 N.M. 616, 866 P.2d 344 (1994). In *Archibeque*, the plaintiff, a prisoner at the Central New Mexico Correction Facility, sued the defendant, a prison intake officer, alleging that the defendant had negligently released the plaintiff into the general prison population despite the fact that one of the plaintiff's known enemies was in that population. *Id.* at 618, 866 P.2d at 346. This enemy and other inmates assaulted the plaintiff the same night he entered the general prison population. *Id.* On a certified question from the United States Court of Appeals for the Tenth Circuit, the *Archibeque* court held that the Tort Claims Act rendered the defendant, a public employee acting within the scope of duty, immune from tortious liability and did not waive that immunity. *Id.*

The court rejected the plaintiff's argument that section 41–4–6 waived the defendant's immunity, holding that the "operation" and "maintenance" of a penitentiary facility did not include "the security, custody, and classification of inmates." *Id.* at 619, 866 P.2d at 347. The court characterized the defendant's acts as "an administrative function associated with the operation of the corrections system," rather than "operating and maintaining the prison's physical premises." *Id.* According to the court, "to read section 41–4–6 as waiving immunity for negligent performance of administrative functions would be

contrary to the plain language and intended purpose of the statute." *Id.*

The court's language in *Archibeque* clearly excludes actions such as Defendants' in the present case from the section 41–4–6 waiver of immunity. Defendants' allegedly negligent acts concerned "the security, custody, and classification" of interviewees. *Id.* Giving a physical agility test to the interviewees was "an administrative function associated with the operation of" the APS facility, rather than "operating and maintaining the [APS'] physical premises." *Id.* According to the *Archibeque* decision, section 41–4–6 waiver of immunity does not apply in such a case. *Accord Bober v. New Mexico State Fair,* 111 N.M. 644, 808 P.2d 614 (1991); *Castillo v. County of Santa Fe,* 107 N.M. 204, 755 P.2d 48 (1988). Thus, section 41–4–6 of the Tort Claims Act cannot support the waiver of Defendants' immunity. *See also Martinez v. Kaune Corp.,* 106 N.M. 489, 745 P.2d 714 (Ct.App.1987), *cert. denied,* 106 N.M. 439, 744 P.2d 912 (1987) (negligent inspection of foods and food processing operations was not negligent operation or maintenance of any building); *Pemberton v. Cordova,* 105 N.M. 476, 734 P.2d 254 (Ct.App.1987) (negligent supervision of student, who assaulted another student, was not negligent operation or maintenance of any building).[1]

**B. No Waiver of Immunity under Section 41–4–12**

■ Plaintiff also argues that section 41–4–12 of the Tort Claims Act waives Defendants' immunity for decedent's death. Section 41–4–12 waives immunity for:

> wrongful death ... resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or *deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico* when caused by law enforcement officers while acting within the scope of their duties.

N.M.Stat.Ann. § 41–4–12 (Michie 1989 & Supp.1994) (emphasis added). Plaintiff alleges that Defendants negligently caused decedent's death, and in doing so deprived him of rights, privileges, or immunities secured by the Fourteenth Amendment of the United States Constitution and by article II, section 4 of the New Mexico Constitution. Plaintiff then alleges that because Defendants are law enforcement officers or their superiors acting within the scope of duty, section 41–4–12 waives immunity for their acts. Plaintiff's argument fails because in her complaint she has alleged only that Defendants acted *negligently* in depriving decedent of his life. Therefore, she has not alleged a violation of section 41–4–12 or the United States or New Mexico Constitutions.

First, Plaintiff has not properly alleged a violation of section 41–4–12. The law in this area is clear:

> This Court has held that a law enforcement officer or agency may be held liable under section 41–4–12 for negligently causing infliction of one of the predicate torts. *See Cross v. City of Clovis,* 107 N.M. 251, 755 P.2d 589 (1988); *Schear v. Board of County Comm'rs,* 101 N.M. 671, 687 P.2d 728 (1984); *Methola v. County of Eddy,* 95 N.M. 329, 622 P.2d 234 (1980). But no case has held that simple negligence in the performance of a law enforcement officer's duty amounts to commission of one of the torts listed in the section.

*Bober v. New Mexico State Fair,* 111 N.M. 644, 653–54, 808 P.2d 614, 623–24 (1991).

Second, Plaintiff has not properly alleged that Defendants deprived decedent of rights, privileges, or immunities secured by the United States or New Mexico Constitutions. The United States Supreme Court has unequivocally stated that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) (emphasis in original); *see also Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677

---

1. The *Archibeque* decision essentially foreclosed Plaintiff's reliance on *Silva v. New Mexico,* 106 N.M. 472, 745 P.2d 380 (1987). "*Silva* provides no generally applicable principle pertaining to the interpretation of Section 41–4–6." 116 N.M. at 621, 866 P.2d at 349.

(1986). The Court notes that while Plaintiff's complaint alleges only that Defendants acted negligently, *see* Plaintiff's Amended Complaint, ¶¶ 8, 9, 10, 12, and 16, in her Memorandum in Support of Plaintiff's Response to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment ("Plaintiff's Memorandum"), Plaintiff argues that she has not based her case on simple negligence, but on "reckless disregard of or deliberate indifference to" decedent's rights. Plaintiff's Memorandum at 8. However, the facts in Plaintiff's complaint simply do not support such an allegation. As such, the Court will not consider Plaintiff's conclusory allegation in ruling on Defendants' motion to dismiss. *See Landmark Land Co. v. Buchanan,* 874 F.2d 717, 722 (10th Cir.1989) ("[a]lthough we are obligated to construe the complaint in the light most favorable to plaintiff, we 'will not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from [its] description of what happened.'" (*quoting* 5 C. Wright & A. Miller, Federal Practice & Procedure § 1357 (1969))).

Finally, Plaintiff has set forth no law supporting her argument that Defendants' actions violated decedent's rights under article II, section 4 of the New Mexico Constitution, which provides:

> All persons are born equally free, and have certain natural, inherent and inalienable rights, among which are the rights of enjoying and defending life and liberty, of acquiring, possessing and protecting property, and of seeking and obtaining safety and happiness.

N.M. Const. art. II, sec. 4. Plaintiff relies on the New Mexico Supreme Court's observation that the language of article II, section 4 of the New Mexico Constitution is broader than that of the Fourteenth Amendment to the United States Constitution. *California First Bank v. New Mexico,* 111 N.M. 64, 76, 801 P.2d 646, 658 (1990). However, that case provides no law to aid Plaintiff, for it adds: "we do not reach the issue of whether, and under what circumstances, violation of [the provisions of article II, section 4] gives rise to a cause of action for damages under the provisions of the Tort Claims Act." *Id.*

The New Mexico Court of Appeals recently considered whether a law enforcement officer's negligence violated article II, section 4, resulting in a waiver of immunity under section 41–4–12 of the Tort Claims Act. *See Caillouette v. Hercules, Inc.,* 113 N.M. 492, 827 P.2d 1306 (Ct.App.), *cert. denied,* 113 N.M. 352, 826 P.2d 573 (1992). In *Caillouette,* the plaintiff alleged that a law enforcement officer negligently caused her husband's death, and that section 41–4–12 of the Tort Claims Act waived the officer's immunity. *Id.* 113 N.M. at 496, 827 P.2d at 1308–09. Specifically, the plaintiff argued that the defendants' negligence deprived decedent of his right to have certain laws enforced under, *inter alia,* article II, section 4 of the New Mexico Constitution. *Id.* at 497, 827 P.2d at 1311. The court cursorily rejected the plaintiff's argument, holding only that "[if] we were to base a waiver of immunity on these provisions, the exceptions thus created would eliminate the principle of sovereign immunity. We do not think that can have been the legislature's intent." *Id.* The court's observation is equally applicable to the instant case. Thus, Plaintiff's argument that Defendants' actions violated article II, section 4, resulting in waiver of immunity, must fail. Because Plaintiff has alleged neither an enumerated tort nor a violation of the constitutions of the United States or New Mexico, section 41–4–12 of the Tort Claims Act cannot support a waiver of Defendants' immunity.

## III. CLAIM UNDER THE NEW MEXICO HUMAN RIGHTS ACT

■ The Court will dismiss Plaintiff's claim under the New Mexico Human Rights Act, N.M.Stat.Ann. §§ 28–1–1 to 28–1–7, 28–1–9 to 28–1–14 (Michie 1991 & Supp.1994), because Plaintiff has failed to exhaust her administrative remedies under the Act. *See* N.M.Stat.Ann. § 28–1–10 (Michie 1991 & Supp.1994). The parties stipulate that Plaintiff has not pursued administrative remedies with the Equal Employment Opportunity Commission or the New Mexico Human Rights Commission regarding decedent's death. The New Mexico Supreme Court re-

cently and unequivocally held that a plaintiff under the New Mexico Human Rights Act must exhaust his or her administrative remedies against each defendant before he or she may sue the defendant in court. *Luboyeski v. Hill,* 117 N.M. 380, 382, 872 P.2d 353, 355 (1994) ("individual defendants cannot be sued in district court under the Human Rights Act unless and until the complainant exhausts her administrative remedies against them"). *See also Phifer v. Herbert,* 115 N.M. 135, 138, 848 P.2d 5, 8 (Ct.App.1993); *Jaramillo v. J.C. Penney Co.,* 102 N.M. 272, 273, 694 P.2d 528, 529 (Ct.App.1985). Plaintiff has produced no law to support her argument that she need not fulfill this requirement because she brings suit as the personal representative of a decedent, rather than on her own behalf, nor has the Court located any law that stands for this proposition.

## IV. CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT

### A. Subchapter I—Employment

Plaintiff correctly does not attempt to state a claim under Subchapter I of the Americans With Disabilities Act ("ADA"), concerning employment, because the effective date of this subchapter was July 26, 1992, about five months after decedent's death on February 14, 1992. *See* Americans With Disabilities Act, Pub.L. No. 101–336, § 108, 104 Stat. 337 (1990). Furthermore, the United States District Court for the Southern District of New York recently held that the ADA does not apply retroactively. *Verdon v. Consolidated Rail Corp.,* 828 F.Supp. 1129, 1140–41 (S.D.N.Y.1993).

### B. Subchapter II—Public Services [2]

The Court will dismiss Plaintiff's claim under Title II of the ADA because Plaintiff as a matter of law is not entitled to compensatory or punitive damages under the applicable relief provisions, but only to equitable relief, which she has not sought. The relief provisions of Title II of the ADA are complex; one must trace a chain of legislation and caselaw through several steps to reach the operative law. One begins at 42 U.S.C.

§ 12133 of the ADA, which confers upon the Title II plaintiff "the remedies, procedures, and rights set forth in section 794a of Title 29 [of the Rehabilitation Act of 1973]." 42 U.S.C.A. § 12133 (West Supp.1994). Section 12133 does not distinguish between 29 U.S.C. § 794a(a)(1) and 29 U.S.C. § 794a(a)(2), even though the subsections are distinct. The Court will therefore deal with each subsection separately.

### 1. Compensatory Damages under Section 794a(a)(1) of the Rehabilitation Act

According to its terms, subsection 794a(a)(1) of the Rehabilitation Act is available to "any employee or applicant for employment aggrieved by the final disposition of . . . any complaint under section 791 of [Title 29]." The subsection confers upon the plaintiff "the remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e–5(f) through (k))." 29 U.S.C.A. § 794a(a)(1) (West 1985). Subsection 2000e–5(g), in turn, specifies the relief actually available in such an action. Under this subsection a successful plaintiff may obtain equitable relief, "which may include . . . reinstatement or hiring of employees, with or without back pay." 42 U.S.C.A. § 2000e–5(g) (West 1981 & Supp.1994). The subsection does not provide for compensatory or punitive damages. *See id.* Thus, under 29 U.S.C. § 794a(a)(1), Plaintiff is not entitled to the compensatory damages she seeks.

### 2. Compensatory Damages under Section 794a(a)(2) of the Rehabilitation Act

Subsection 794a(a)(2) of the Rehabilitation Act, available to "any person aggrieved by any act or failure to act by any recipient of Federal assistance," confers upon such persons "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d *et seq.* ]." 29 U.S.C.A. § 794a(a)(2) (West 1985). Because Title VI does not have a remedies provision, federal caselaw determines what

**2.** The effective date of Title II of the ADA was January 26, 1992. Americans With Disabilities

Act, Pub.L. No. 101–336, § 205(a), 104 Stat. 338 (1990).

remedies are available. Crucial to this question is the recent United States Supreme Court decision of *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). In *Franklin,* the Supreme Court held that "a damages remedy is available for an action brought to enforce Title IX." *Id.* 503 U.S. at ——, 112 S.Ct. at 1038. The holding is significant to the issue of whether such a remedy is available under Title VI for two reasons. First, the Court has construed Title VI and Title IX consistently; indeed, in finding a damages remedy under Title IX, the Court cited to cases construing Title VI. *Id.* at ——, 112 S.Ct. at 1034–35. Second, the Court in *Franklin* set forth the analysis the federal courts should use to determine what remedies a plaintiff may obtain under a statute for which a private right of action exists but which specifies no remedies. According to the *Franklin* analysis, once a court has determined that a statute provides a private right of action, the court must "presume the availability of all appropriate remedies" such that the court may " 'make good the wrong done.' " *Id.* at ——, 112 S.Ct. at 1033 (*quoting Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)). The court must then determine whether Congress intended to limit the remedies available. *Id.* 503 U.S. at ——, —— – ——, 112 S.Ct. at 1032, 1035–37. Finally, the court must determine whether the remedies sought are "appropriate." *Id.* at ——, 112 S.Ct. at 1038.

Several courts have used the *Franklin* analysis to determine whether damages are available under Title VI and have uniformly determined that for *intentional violations,* they are available. *See, e.g., Wood v. President & Trustees of Spring Hill College,* 978 F.2d 1214 (11th Cir.1992); *J.L. v. Social Sec. Admin.,* 971 F.2d 260 (9th Cir.1992); *Tyler v. City of Manhattan,* 849 F.Supp. 1442 (D.Kan.1994); *Miller v. Spicer,* 822 F.Supp. 158 (D.Del.1993); *U.S. v. Forest Dale, Inc.,* 818 F.Supp. 954 (N.D.Tex.1993); *Kraft v. Memorial Medical Ctr.,* 807 F.Supp. 785 (S.D.Ga.1992); *Ali v. City of Clearwater,* 807 F.Supp. 701 (M.D.Fla.1992); *Doe v. District of Columbia,* 796 F.Supp. 559 (D.D.C.1992);

*Tanberg v. Weld County Sheriff,* 787 F.Supp. 970 (D.Colo.1992). In *Tanberg,* the court first noted that as in *Franklin,* the plaintiff's claim under the Rehabilitation Act § 794a(a)(2) and Title VI arose under a federal statute providing a private right of action but failing to specify the relief obtainable. 787 F.Supp. at 972. As such, the court concluded that "any appropriate remedy, including compensatory damages, is available to 'make good the wrong done.' " *Id.* (*quoting Franklin,* 503 U.S. at ——, 112 S.Ct. at 1033 (*quoting Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946))). Next, the court observed that Congress has not expressly disallowed compensatory damages under the Rehabilitation Act and Title VI and did not intend to limit the remedies available. *Id.* Finally, the court decided that compensatory damages were an "appropriate" remedy where the plaintiff alleged intentional discrimination, and where money damages tended to redress the plaintiff's injuries better than equitable remedies. *Id.* at 973.

This Court takes note, however, of the *Tyler* court's reasoning in declining to award the plaintiff in that case compensatory damages. *See Tyler,* 849 F.Supp. at 1444. The *Tyler* court first observed that prior to *Franklin,* a majority of courts to have considered the issue had determined that compensatory damages for emotional distress were not available under § 794a(a)(2) of the Rehabilitation Act. *Id.* The court then acknowledged the *Franklin* and *Tanberg* decisions, but distinguished the case before it on two grounds. *Id.* First, the court noted that

> *Tanberg* involved a claim of intentional discrimination, ... while plaintiff's claim in the instant case does not. Further, *Tanberg* specifically determined that compensatory damages were an 'appropriate' remedy in that case ... since reinstatement was not considered a feasible option because of plaintiff's deteriorating condition.

*Id.*[3] The *Tyler* decision highlights the importance of a condition every court has im-

---

**3.** The Court notes that had Plaintiff properly alleged intentional discrimination, compensatory damages would have been an "appropriate" remedy in her case. As in *Tanberg,* reinstatement of

posed as a prerequisite to a damages remedy under § 794a(a)(2) of the Rehabilitation Act or § 12133 of the ADA: the plaintiff must allege intentional discrimination. "Compensatory damages are precluded in cases of unintentional discrimination, but are permissible on a showing of intentional discrimination." *Wood*, 978 F.2d at 1219.

Applying the law to the present matter, the Court concludes that Plaintiff is as a matter of law not entitled to compensatory damages under 29 U.S.C. § 794a(a)(2). To be entitled to compensatory damages under these sections, as discussed at length above, Plaintiff must allege that Defendants *intentionally* discriminated against decedent because of his disability. *See, e.g., Wood*, 978 F.2d at 1219. Plaintiff in the pleadings has failed to allege any facts suggesting that Defendants intended to discriminate against Plaintiff's decedent because of his cardiovascular disability. Rather, Plaintiff alleges that Defendants' endurance test was "not reasonably related to the potential employee's ability to perform the essential functions of the job," and that the test tended to "screen out qualified individuals with disabilities on the basis of their disability." Plaintiff's Amended Complaint at 10, ¶¶ 13–14. Taking the factual allegations of Plaintiff's complaint as true, and making all reasonable inferences in Plaintiff's favor, Plaintiff has alleged no facts tending to show that Defendants required applicants to complete the run with the intent to adversely affect disabled persons.

Likewise, Plaintiff has alleged no facts tending to show that Defendants treated decedent differently because of his disability. While Plaintiff does allege that Defendants knew of decedent's disability before requiring him to complete the run, Plaintiff does not allege that Defendants required him to complete the run because of the disability. Rather, Plaintiff's own allegations make clear that Defendants required decedent to complete the run because all applicants for the position of security officer with APS had to do so.

Plaintiff argues that she has alleged "intentional discrimination" in Plaintiff's Memo-

randum, at 20; she also argues that the test is "designed to disqualify, screen and weed out any applicants having a cardiovascular condition" in a "diabolically effective" way. Plaintiff's Memorandum at 20–21. The Court need not consider these assertions for two reasons. First, they are not contained in the pleadings. Second, and more importantly, they are bald, conclusory allegations accompanied by no assertions of fact. As such, the Court will reject them in deciding Defendants' motion to dismiss. *See, e.g., Frazier v. DuBois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990); *Landmark Land Co. v. Buchanan*, 874 F.2d 717, 722 (10th Cir.1989). Because Plaintiff has alleged no facts tending to show that Defendants intended to discriminate against decedent because of his disability, she is as a matter of law not entitled to compensatory damages under section 12133 of the ADA and section 794a(a)(2) of the Rehabilitation Act. 42 U.S.C.A. § 12133 (West Supp.1994); 29 U.S.C.A. § 794a(a)(2) (West 1985).

### 3. Compensatory Damages under 42 U.S.C. § 1981a of the Civil Rights Act

Finally, the Court must consider whether Plaintiff is entitled to compensatory damages under 42 U.S.C. § 1981a of the Civil Rights Act. Section 1981a confers on certain civil rights plaintiffs the remedy of compensatory and punitive damages in two subsections, 1981a(a)(1) and 1981a(a)(2). 42 U.S.C.A. § 1981a (West 1981 & Supp.1994). Again, the Court will consider each subsection individually.

#### a. Subsection 1981a(a)(1)

Subsection 1981a(a)(1) does not apply to Plaintiff, because it provides a remedy only against a defendant who "engaged in unlawful intentional discrimination ... prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e–2 or 2000e–3) [or 42 U.S.C. § 2000e–16]." 42 U.S.C.A. § 1981a(a)(1) (West 1981 & Supp.1994). Beyond the fact that Plaintiff has not alleged that Defendants engaged in intentional discrimination, Plaintiff has also failed to allege that Defendants engaged in conduct that 42

the decedent, or other equitable relief, is not

possible. *Tanberg*, 787 F.Supp. at 973.

U.S.C. §§ 2000e–2, 2000e–3, or 2000e–16 prohibit. First, Plaintiff has made no allegation with respect to 42 U.S.C. §§ 2000e–2 or 2000e–3. Plaintiff has alleged that Defendants violated 42 U.S.C. § 12133 of the ADA, which, through 29 U.S.C. § 794a of the Rehabilitation Act, does refer to 42 U.S.C. § 2000e–16. *See* 42 U.S.C.A. § 12133 (West Supp.1994); 29 U.S.C.A. § 794a(a)(1) (West 1985). However, the provision of 42 U.S.C. § 2000e–16 that prohibits certain discriminatory practices is addressed solely to the federal government, *see* 42 U.S.C.A. § 2000e–16(a) (West 1981 & Supp.1994), and therefore Defendants cannot have violated it. Thus, 42 U.S.C. § 1981a(a)(1) does not confer upon Plaintiff the remedy of compensatory or punitive damages.

### b. Subsection 1981a(a)(2)

Likewise, subsection 1981a(a)(2) does not confer upon Plaintiff the remedy of compensatory or punitive damages for violations of 42 U.S.C. § 12133 of the ADA. Subsection 1981a(a)(2) provides for compensatory or punitive damages where a defendant has "engaged in unlawful intentional discrimination under ... section 102 of the Americans With Disabilities Act of 1990 (42 U.S.C. 12112), or committed a violation of section 102(b)(5) of the Act [42 U.S.C. § 12112(b)(5) ]." 42 U.S.C.A. § 1981a(a)(2) (West 1981 & Supp.1994). Again, Plaintiff has not alleged that Defendants engaged in intentional discrimination. Furthermore, Plaintiff has alleged only that Defendants violated 42 U.S.C. § 12133 of the ADA, not 42 U.S.C. § 12112, which latter section was not effective when the events at issue occurred. *See* 42 U.S.C.A. § 1981a(a)(2) (West 1981 & Supp.1994); 42 U.S.C.A. § 12133 (West Supp.1994); 42 U.S.C.A. § 12112 (West Supp.1994). Subsection 1981a(a)(2) does not provide for compensatory or punitive damages for a violation of 42 U.S.C. § 12133. 42 U.S.C.A. § 1981a(a)(2) (West 1981 & Supp.1994).

For the foregoing reasons, Plaintiff is as a matter of law not entitled to the compensatory damages she seeks, and she has not sought any other relief. *See* Plaintiff's Amended Complaint at 12. Therefore, the Court will dismiss Plaintiff's claim under the ADA.

## V. CLAIM UNDER THE REHABILITATION ACT OF 1973

The Court will also dismiss Plaintiff's claim under 29 U.S.C. § 794 of the Rehabilitation Act of 1973, because she is as a matter of law not entitled to compensatory or punitive damages under this section. The remedies provision for violations of 29 U.S.C. § 794 is 29 U.S.C. § 794a(a)(2), which the Court has already discussed at length *supra* with regard to Plaintiff's ADA claim. Briefly, 29 U.S.C. 794a(a)(2) confers upon 29 U.S.C. § 794 plaintiffs the remedies, procedures, and rights of 42 U.S.C. § 2000d, or Title VI. Federal courts have concluded that plaintiffs under Title VI are entitled to compensatory damages only for *intentional* discrimination. *See, e.g., Wood v. President & Trustees of Spring Hill College,* 978 F.2d 1214 (11th Cir.1992); *Tyler v. City of Manhattan,* 849 F.Supp. 1442 (D.Kan.1994). Because Plaintiff has not properly alleged that Defendants engaged in intentional discrimination, she is not entitled to compensatory damages under 29 U.S.C. § 794a(a)(2). *See id.;* 29 U.S.C.A. § 794a(a)(2) (West 1985).

## VI. ALCOHOL AND DRUG TESTS

The Court will dismiss Plaintiff's claim that Defendants violated Plaintiff's constitutional rights under the Fourteenth Amendment to the United States Constitution, and other provisions of the United States and New Mexico Constitutions, when they allegedly ordered drug and alcohol tests to be performed on decedent's corpse. Plaintiff has cited no law to support her allegation that she has a Fourteenth Amendment liberty interest in the treatment of decedent's corpse. Furthermore, the United States Court of Appeals for the Fifth Circuit recently considered plaintiffs' liberty interest in the treatment of a relative's corpse and found that the plaintiffs had no such interest. *See Arnaud v. Odom,* 870 F.2d 304, 311 (5th Cir.), *cert. denied sub nom. Tolliver v. Odom,* 493 U.S. 855, 110 S.Ct. 159, 107 L.Ed.2d 117

(1989).[4] This Court will therefore "[refrain] from creating from the substantive parameters of the due process clause ... a new liberty interest in the instant case." *Id.* at 310–11. Furthermore, Plaintiff provides no legal support for her claims under any other provision of the United States or New Mexico Constitutions.

## VII. CLAIMS UNDER THE CIVIL RIGHTS ACT OF 1991, SECTIONS 1983 AND 1981

The Court will dismiss Plaintiff's claims that Defendants deprived decedent of life and property without due process of law, in violation of 42 U.S.C. §§ 1981 and 1983, the Fourteenth Amendment to the United States Constitution and article II, section 4 of the New Mexico Constitution. Initially, Plaintiff can only bring suit under 42 U.S.C. §§ 1981 and 1983 against Defendants in their individual capacities, because Defendant APS, as an "arm of the state," *see Martinez v. Taos Bd. of Educ.,* 748 F.2d 1393, 1396 (10th Cir.1984), and Defendants APS employees in their official capacities, are not "persons" for the purposes of the Civil Rights Act of 1991. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64, 70–71, 109 S.Ct. 2304, 2308–09, 2312, 105 L.Ed.2d 45 (1989).

▇▇▇▇ Plaintiff's claims against Defendants in their individual capacities fail because Plaintiff has not properly alleged that Defendants violated decedent's constitutional rights. Section 1983 "does not create any substantive rights, but provides a recovery for the deprivation of federal rights." *Scothorn v. Kansas,* 772 F.Supp. 556, 560 (D.Kan. 1991). Thus, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." *Barnard v. Chamberlain,* 897 F.2d 1059, 1062 (10th Cir.1990). As discussed above, Plaintiff has alleged no more than that Defendants acted negligently in requiring Plaintiff's decedent to run 1.5 miles; and, the United States Supreme Court has unequivocally stated that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) (emphasis in original). Because Plaintiff has not properly alleged that Defendants violated decedent's constitutional rights, she cannot state a claim under 42 U.S.C. § 1983. Plaintiff has also failed to produce any legal support for the argument that the Court should treat article II, section 4 of the New Mexico Constitution any differently than the Fourteenth Amendment. Finally, 42 U.S.C. § 1981 does not apply to the present case because Plaintiff has alleged discrimination on the basis of disability, not on the basis of race, and 42 U.S.C. § 1981 applies only to the latter. *See* 42 U.S.C.A. § 1981 (West 1981 & Supp.1994) ("[a]ll persons ... shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings ... *as is enjoyed by white citizens* ") (emphasis added); *see also, e.g., Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 609–10, 107 S.Ct. 2022, 2026–27, 95 L.Ed.2d 582, *reh'g denied,* 483 U.S. 1011, 107 S.Ct. 3244, 97 L.Ed.2d 749 (1987) (holding that section 1981 protects persons subjected to discrimination solely because of their ancestry or ethnic characteristics). Therefore, the Court will dismiss Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983.

Wherefore,

**IT IS ORDERED, ADJUDGED AND DECREED** that Defendants' March 29, 1994, motion to dismiss for failure to state a claim upon which relief can be granted, be, and hereby is, granted.

---

**4.** Furthermore, the facts in the *Arnaud* case were far more egregious than the facts Plaintiff alleges in the present case. In *Arnaud,* the defendant performed "grisly controlled experiments" upon the corpses of the plaintiffs' infant children. 870 F.2d at 306. Plaintiff alleges milder facts in two respects. First, she alleges that Defendants ordered drug and alcohol screening tests, not "grisly controlled experiments." Second, Plaintiff's decedent was an adult at the time of his death, whereas plaintiffs' decedents in *Arnaud* were infant children. *Id.*