RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0038P (6th Cir.)
File Name:  01a0038p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

GAIL MINGER, as Personal
Representative of the Estate
of Michael Howard Minger,
　　　　*Plaintiff-Appellant,*

　　　　*v.*

JOSEPH GREEN, Director,
Public Safety Department,
Murray State University;
DAVID WILSON, Associate
Director, Housing, Murray
State University,
　　　　*Defendants-Appellees.*

No. 99-6373

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No.  99-00142—Thomas B. Russell, District Judge.

Argued:  September 21, 2000

Decided and Filed:  February 9, 2001

Before: BOGGS and SUHRHEINRICH, Circuit Judges;
and ALDRICH, District Judge.[*]

———————————

**COUNSEL**

**ARGUED:**    Jennifer J. Hall, Louisville, Kentucky, for
Appellant. Jonathan Freed, BRADLEY & FREED, Paducah,
Kentucky, for Appellee.   **ON BRIEF:**   Jennifer J. Hall,
Louisville, Kentucky, for Appellant.    Jonathan Freed,
BRADLEY & FREED, Paducah, Kentucky, John P. Rall,
MURRAY STATE UNIVERSITY, GENERAL COUNSEL,
Murray, Kentucky, for Appellees.

———————————

**OPINION**

———————————

BOGGS, Circuit Judge. Plaintiff-appellant, Gail Minger,
appeals a district court decision granting the FED. R. CIV. P.
12(b)(6) motions of defendant-appellees, Joseph Green and
David Wilson, to dismiss Minger's wrongful death diversity
action.   For the following reasons, we affirm in part and
reverse in part.

I

Gail Minger is the mother and personal representative of
the Estate of Michael Howard Minger.  In 1997, Michael, a
student from Niceville, Florida, enrolled at Murray State
University (MSU) in Murray, Kentucky, as a vocal
performance major.  All MSU first- and second-year students
are required to live in on-campus dormitories. Michael had
documented disabilities, including attention-deficit disorder,
dyslexia, and perception/spatial disorientation.  According to

———————————

[*]The Honorable Ann Aldrich, United States District Judge for the
Northern District of Ohio, sitting by designation.

implementation of a security system is a discretionary
function.   The Kentucky Supreme Court has defined a
discretionary function as when "the person or persons
exercising it may choose which of several courses will be
followed." *Malone*, 957 S.W.2d at 201.  Green exercised
judgment in deciding how best to implement a security
system in Hester Hall.  When a state employee or official
exercises a discretionary function within the scope of their
authority, that individual is immune from liability under
Kentucky law. *See ibid*.  Since Green was exercising a
discretionary function within the scope of his authority as
MSU's Director of Public Safety, he is entitled to immunity
from Minger's claim alleging that he was negligent in the
performance of his duties.

IV

For the foregoing reasons, the judgment of the district court
is AFFIRMED in part and REVERSED in part.  The district
court's decision granting defendant Joseph Green's FED. R.
CIV. P. 12(b)(6) motion to dismiss is AFFIRMED.   The
district court's decision granting defendant David Wilson's
FED. R. CIV. P. 12(b)(6) motion to dismiss is REVERSED.
The case is remanded to the district court for further
proceedings not inconsistent with this opinion.

C

In contrast to her claim against Wilson, Minger does not allege that Green, MSU's Director of Public Safety, committed an intentional tort. On appeal, however, Minger argues that Green acted outside the scope of his authority. As a result, Minger contends that Green is not immune from liability since, under Kentucky law, state officers or employees cannot assert immunity when a claim alleges "action outside the scope of authority." *Malone*, 957 S.W.2d at 202. Minger claims that Green failed to comply with his legal duties as director of public safety by not reporting the suspected arson of September 13 to the state fire marshal's office and by being cited by the state fire marshal's office in 1996 and 1997 for failure to comply with state fire codes in Hester Hall and other buildings. As a result, Minger argues, Green was acting outside the scope of his authority by failing to comply with statutory security and safety codes. Green points out, however, that in her amended complaint, Minger stated that Green was "at all times relevant herein acting within the course and scope of his employment." Moreover, Minger never raised these factual allegations in the district court. This court has held that "issues not litigated in the trial court are generally not appropriate for appellate consideration." *Taft Broad. Co. v. United States*, 929 F.2d 240, 243 (6th Cir. 1991). While there have been exceptions to this rule in certain cases, "[t]he fact that the issue newly raised on appeal requires or necessitates a determination of facts is generally deemed good reason to refuse consideration of the issue for the first time in the appellate court." *Id*. at 244. In order to determine if Green acted outside the scope of his authority by failing to comply with state laws, we would be required to examine the new contentions that Minger is raising on appeal. We decline to do so and therefore we will not address Minger's claim that Green acted outside the scope of his authority.

Minger's only remaining claim against Green is that he was negligent in the performances of his duties by failing to maintain an adequate security system in Hester Hall. The

Minger's complaint, Michael and his parents sought an exemption from the dormitory residency requirements because of Michael's disabilities, but their requests were denied. In late 1998, at the beginning of Michael's second year at MSU, Michael moved in to Room 413 in Hester Hall.

Early on the morning of September 13, 1998, a fire started on Michael's floor in Hester Hall. According to Minger's complaint, investigators suspected arson. Minger's complaint also states that between September 13 and 18, MSU received false reports of fires on Michael's floor. On September 14, 1998, Gail Minger called the MSU housing office to inquire about the cause of the September 13 fire. She spoke with David Wilson, the Associate Director of the housing office. Minger's complaint states that Wilson did not tell Gail that arson was the suspected cause of the fire. Instead, Wilson called the fire "minor" and "nothing to worry about" and told her that the dorm residents were safe. Wilson discouraged Gail from calling the fire department.

On September 18, 1998, a second fire was set on Michael's floor in the same location as the first fire. Michael was sleeping in his room at the time. He arose and attempted to escape Hester Hall, but he died of smoke inhalation. Michael was the only student who died in the fire.

Gail Minger filed a complaint in federal district court on the basis of diversity jurisdiction on May 13, 1999, asserting state law claims against Wilson and Joseph Green, Director of Public Safety at MSU. In her complaint, Minger stated that when she called Wilson on September 14, 1998, to inquire about the cause of the September 13 fire, Wilson

never at any time, in response to Gail Minger's inquiries, revealed to her that the September 13 fire was suspected to be a set fire. Instead, when Gain [sic] Minger indicated that she was going to call the Murray Fire Department to find out how the September 13 fire started and to get someone from the fire department to check out her son's room, Defendant, David Wilson, told her, 'No, no, no. You don't need to do that.' He said the

September 13 fire was 'minor' and that 'there was nothing to worry about.'

(J.A. 16). As a result, Minger claimed that Wilson

> negligently misrepresented the cause of the September 13 fire to Gail Minger by not revealing to Gail Minger that the fire was suspected to be arson and by discouraging Gail Minger from the need to investigate the fire further. Had he revealed to Gail Minger that the fire was suspected to be arson, or had he not discouraged Gail Minger from the need to investigate the fire further, Gail Minger would have determined that the fire was a set fire.

*Ibid*. Minger claimed that if she had known that the cause of the September 13 fire was suspected to be arson, Michael would have immediately vacated the dormitory. Instead, Minger claimed that, in reliance on Wilson's statements regarding the September 13 fire, Michael remained in the dormitory. In addition, Minger alleged that Wilson knew or should have known that Gail and Michael would rely on Wilson's statements concerning the cause of the fire.

Minger alleged that Green had a statutory duty to prevent unlawful conduct and to protect all persons located on campus from harm. She also alleged that the arson was a reasonably foreseeable criminal act and that Green breached his duty to Michael by not having an adequate security system in place to assure his safety.

Green and Wilson filed motions to dismiss, claiming that Minger's suit was barred by the Eleventh Amendment of the United States Constitution as it was brought against each of them in their official capacity. Minger filed an amended complaint on June 28, 1999. The only change in the amended complaint was the statement that Green and Wilson were being sued in their individual capacities. The district court ruled that, since Minger's suit was no longer a suit against a state, it was not barred under the Eleventh Amendment.

correction of the legal theory does not prejudice the opposing party. 43 F.3d at 920. Wilson is not prejudiced by this court's determination that Minger stated a claim for intentional misrepresentation. The facts alleged in the complaint and the statements in the complaint describing the claim as involving "misrepresentation" provided fair notice to Wilson of the grounds for Minger's claim and the type of litigation involved.

Under Kentucky law, individual state employees who knowingly commit intentional torts or wrongful acts are not entitled to immunity. *See Upchurch*, 330 S.W.2d at 431. This is true regardless of whether the employee was acting within the scope of his authority. *See Carr*, 423 S.W.2d at 522; *Spillman v. Beauchamp*, 362 S.W.2d 33, 36-37 (Ky. 1962). Minger has stated a claim against Wilson for intentionally misrepresenting the cause of the September 13 fire. Therefore, Wilson is not entitled to immunity under Kentucky law. Since we have concluded that Minger stated a claim against Wilson for an intentional tort, Minger's claim can no longer be characterized as a negligence action against which Wilson can assert an immunity defense.[5]

---

[5] Minger alleged only a single claim against Wilson. Although she labeled the claim as one involving "negligent misrepresentation," we have concluded, after an analysis of the underlying substance of the complaint, that the claim was mislabeled and that Minger has stated a claim for intentional misrepresentation. Therefore, Minger has not stated a claim for "negligent misrepresentation" or for any other form of negligence on Wilson's part.

Under Kentucky law, the defense of immunity can only be asserted by state employees performing discretionary functions within the scope of their authority or ministerial functions within the scope of their authority and not outside the traditional role of government. *See Malone*, 957 S.W.2d at 201-02. Even if they perform these types of functions, state employees can assert immunity only against claims based on their negligent actions. *See ibid*. Since Minger has not stated a negligence claim against Wilson, we need not address the question of whether Wilson was undertaking the type of government function that would entitle him to immunity.

ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 1204, 1296 (2d ed. 1990). Rule 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity," but that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Minger has stated with particularity the circumstances of her conversation with Wilson and her subsequent reliance on his statements and has averred generally Wilson's intent in making the statements to Minger.

Wilson argues that Minger could not have stated a claim for intentional misrepresentation because she repeatedly used the label "negligent misrepresentation." This argument is unconvincing, however, since we must look beyond labels to the facts alleged in the complaint. *See Labram*, 43 F.3d at 920; *Louisville & Nashville R.R. Co.*, 221 F.2d at 701. Indeed, one of the cases cited by Wilson indicates that this is the proper analysis. In *Tafoya v. Bobroff*, 865 F. Supp. 742 (D.N.M. 1994), the plaintiff brought a wrongful death claim on behalf of her deceased husband's estate. The complaint alleged that various state entities and state officials acted negligently in depriving the decedent of his rights under the United States and New Mexico Constitutions. The plaintiff then argued that her case was not based on simple negligence, but on "reckless disregard of or deliberate indifference to" the decedent's rights. *Id*. at 747. The court ruled, however, that "the facts in Plaintiff's Complaint simply do not support such an allegation." *Ibid*. The court in *Tafoya* did not disregard the plaintiff's allegation that the officials acted recklessly solely because she had stated in her complaint that they acted negligently. Instead, the court reviewed the complaint to determine if the facts alleged supported the plaintiff's claim of recklessness. In *Tafoya*, the court ruled that the facts in the complaint were insufficient to support the plaintiff's claim. Here, we have determined that the facts alleged in the complaint are sufficient to state a claim that Wilson intentionally misrepresented the cause of the fire.

The court in *Labram* established that dismissal on the basis of a mislabeled legal claim is not warranted as long as

Green and Wilson filed new motions to dismiss on the basis that they were entitled to immunity under Kentucky state law. On September 3, 1999, the district court granted the motions by Green and Wilson and dismissed the case.

## II

Whether the district court properly dismissed a claim under FED. R. CIV. P. 12(b)(6) is a question of law subject to de novo review. *See Gao v. Jennifer,* 185 F.3d 548, 552 (6th Cir. 1999); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995). Motions to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Sistrunk*, 99 F.3d at 197. In considering the motion, all factual allegations in the complaint are accepted as true. *See Gao*, 185 F.3d at 552.

## III

The district court ruled that Green and Wilson were entitled to immunity under Kentucky law on the basis that they were performing discretionary acts within the general scope of their authority. We will review Kentucky law regarding the immunity of state officers and employees and then assess Minger's claims against Wilson and Green in turn.

## A

It is a well-established principle of Kentucky law that a state officer or employee is liable for "deliberate wrongdoing, regardless of whether he was acting within the scope of his authority." *Carr v. Wright*, 423 S.W.2d 521, 522 (Ky. 1968). This is based on the premise that, while a state officer or employee may be entitled to official immunity for actions authorized by law, when a state officer or employee "exceeds, ignores, or disregards the limits set to his authority, he cannot then justify his act at all, but must respond to the party injured like any other wrongdoer." *Upchurch v. Clinton County*, 330 S.W.2d 428, 431 (Ky. 1959). This principle recently was

reaffirmed by the Kentucky Supreme Court when it stated that a state officer or employee is not immune from suit when a claim alleges "illegal action or action outside the scope of authority." *Franklin County v. Malone*, 957 S.W.2d 195, 202 (Ky. 1997). Therefore, a state officer or employee is not immune from suit under Kentucky law when the individual knowingly commits an intentional tort, wrongful act, or other form of deliberate wrongdoing.

In contrast, a state officer or employee who is negligent in the performance of the individual's duties may be immune from suit under Kentucky law. In *Malone*, its most recent pronouncement on the extent of the immunity of state officers and employees, the Kentucky Supreme Court analyzed the situations in which state officers and employees are immune from liability for actions they perform negligently. This court applies the Kentucky Supreme Court's analysis in *Malone* to the facts of this case because "[i]n those few instances in which the highest state court has recently spoken to the precise question at issue in a particular setting, the duty of the federal court to determine and apply state law is easily met." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir. 1980).

In *Malone*, the Kentucky Supreme Court noted the long-standing principle of Kentucky law that state officers and employees are entitled to immunity when performing discretionary functions within the general scope of their authority. 957 S.W.2d at 201. In addition, the Kentucky Supreme Court recognized that in enacting amendments to Kentucky's Board of Claims Act in 1986, the Kentucky state legislature enlarged the circumstances in which state officers and employees are entitled to immunity when acting within the scope of their employment. *See id.* at 202 (citing KY. REV. STAT. ANN. § 44.070 *et seq.*). As a result of this legislation, Kentucky state officers and employees are immune from suit when they negligently perform ministerial

these required elements. First, Minger alleges that "David Wilson, never at any time, in response to Gail Minger's inquiries [regarding the cause of the September 13 fire], revealed to her that the September 13 fire was suspected to be a set fire." Second, the complaint alleges that Wilson "discouraged Gail Minger from the need to investigate the fire further." When Mrs. Minger said she was going to contact the Murray Fire Department, Wilson said "'No, no, no. You don't need to do that.' He said the September 13 fire was 'minor' and that 'there was nothing to worry about.'" Third, the complaint alleges that Wilson "knew or should have known that Gail Minger and Michael would rely on his statements about the cause of the September 13 fire and refrain from taking further steps to protect Michael in the event of another fire occurring in Hester Hall." Finally, the complaint alleges that, as a result of the Mingers' reliance on Wilson's statements, the statements were "a substantial factor in causing Michael to suffer fatal personal injuries." Thus, these portions of Minger's complaint allege that Wilson knowingly misrepresented the cause of the September 13 fire, leading the Mingers to rely on Wilson's statements and not to take further action to investigate the fire, thereby causing injury. The allegations are sufficient to state a claim for intentional misrepresentation.[4]

The statements also meet the heightened pleading standards set forth in FED. R. CIV. P. 9(b). While state law governs the burden of proving fraud at trial in a diversity action in federal court, the procedure for pleading fraud in all diversity suits in federal court is governed by the special pleading requirements of FED. R. CIV. P. 9(b). *See Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985); *see also* 5 CHARLES ALAN WRIGHT &

---

[4]Of course, this conclusion is made only for purposes of determining whether Minger stated a claim that survives Wilson's FED. R. CIV. P. 12(b)(6) motion. We make no judgment as to the merits of Minger's claim. On remand, Wilson is free to move for summary judgment on the basis that Minger has not demonstrated the existence of a genuine issue of material fact as to whether Wilson intentionally misrepresented the cause of the September 13 fire.

which requires only that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ibid.*

The court noted that dismissal under FED. R. CIV. P. 12(b)(6) is proper "only if it can be said that on the claim as pleaded the claimant can prove no set of facts that would entitle her to relief." *Ibid.* According to the court, "[l]egal labels characterizing a claim cannot, standing alone, determine whether it fails to meet this extremely modest standard. Even where such a label reflects a flat misapprehension by counsel respecting a claim's legal basis, dismissal on that ground alone is not warranted so long as any needed correction of legal theory will not prejudice the opposing party." *Ibid.* The court looked beyond the label of "sexual molestation" and analyzed the substance of the plaintiff's complaint, concluding that the pleading stated a claim for common-law battery. Since the pleading gave the defendant fair notice of the "nature and basis or grounds of the claim" and served as a "general indication of the type of litigation involved," the court determined that the defendant was not prejudiced. *Id.* at 921.

A close reading of Minger's complaint indicates that she stated a claim for intentional misrepresentation. In order to establish such a claim under Kentucky law, a party must allege a material misrepresentation that is: (1) false, (2) known to be false or made recklessly, (3) made with intent to be acted upon, (4) acted in reliance thereon, and (5) the cause of injury. *See United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).[3] An analysis of the statements alleged by Minger in her complaint indicates the presence of

---

[3]The *Rickert* court stated that these elements form the basis of a claim for fraud under Kentucky common law. However, Kentucky courts have recognized that intentional misrepresentation and fraud have the same meaning under Kentucky common law. *See, e.g., Morton v. Bank of the Bluegrass and Trust Co.*, 18 S.W.3d 353, 358 (Ky. Ct. App. 1999) ("We conclude, however, that the trial court erred in dismissing [plaintiff's] intentional misrepresentation (fraud) claim.").

functions within the scope of their employment.[1] Discretionary functions are those that involve policy making or significant judgment, while ministerial functions involve carrying out routine duties. *See ibid*; *see also Collins v. Commonwealth of Ky. Natural Res. & Envtl. Prot. Cabinet*, 10 S.W.3d 122, 126 (Ky. 1999).[2] The Kentucky Supreme

---

[1]Specifically the statute states:

The Board of Claims shall have primary and exclusive jurisdiction over all negligence claims for the negligent performance of ministerial acts against the Commonwealth, any of its cabinets, departments, bureaus, or agencies, or any officers, agents, or employees thereof while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus, or agencies.

KY. REV. STAT. ANN. § 44.073(2).

In addition, the statute states that "state institutions of higher education under KRS Chapter 164 are agencies of the state." KY. REV. STAT. ANN. § 44.073(1). MSU is a state institution of higher education under KY. REV. STAT. ANN. § 164.001(15).

[2]In *Malone*, the Kentucky Supreme Court elaborated on the distinction between discretionary and ministerial functions. The court stated that "[t]he essence of a discretionary power is that the person or persons exercising it may choose which of several courses will be followed. The power to exercise an honest discretion necessarily includes the power to make an honest mistake of judgment." 957 S.W.2d at 201 (citing *Commonwealth v. Frost*, 172 S.W.2d 905 (Ky. Ct. App. 1943)).

The court went on to quote *Upchurch v. Clinton County*, 330 S.W.2d 428, 430 (1959):

Discretionary . . . duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful and where it is left to the will or judgment of the performer to determine in which way it shall be performed. However, an act is not necessarily taken out of the class styled "ministerial" because the officer performing it is vested with a discretion

Court subsequently limited the scope of the 1986 Kentucky legislation, ruling that it does not extend to state officers and employees who engage in activities outside the "traditional role of government." *Malone,* 957 S.W.2d at 202.

Therefore, state officers and employees are immune from suit under Kentucky law when they: (1) negligently perform discretionary functions within the scope of their authority or (2) negligently perform ministerial functions within the scope of their authority but not outside the traditional role of government. State officers and employees are not immune from suit under Kentucky law when they: (1) commit an illegal action or similar form of wrongdoing or act outside the scope of their authority or (2) negligently perform ministerial functions within the scope of their authority but outside the traditional role of government.

### B

The district court found that Wilson, MSU's Associate Director of Housing, was immune from suit under Kentucky state law. The court concluded that Wilson was being sued only for negligence and was immune because he was performing a discretionary act within the scope of his authority. We disagree. We hold that Minger sufficiently alleged that Wilson *intentionally* misrepresented the cause of the September 13 fire in his September 14 conversation with Gail Minger. As a result, Wilson is not immune from suit under Kentucky law to the extent he committed an intentional tort.

The district court determined that Wilson was being sued for negligent performance of his duties and that he was immune from liability under Kentucky law because he was performing discretionary functions within the scope of his authority. It is understandable that the district court concluded that Wilson was being sued for negligent performance of his duties because Minger's complaint states

respecting the means or method to be employed.

that her claim against Wilson is based on his negligent misrepresentation of the cause of the September 13 fire. However, when we analyze Minger's complaint by looking beyond labels to the substance of the allegations, we see that Minger stated a claim against Wilson for knowingly committing a wrongful act--intentionally misrepresenting the cause of the September 13 fire.

Federal Rule of Civil Procedure 8(f) states that "All pleadings shall be so construed as to do justice." This rule directs courts to construe pleading liberally within the standards of the notice-pleading regime mandated by the Federal Rules of Civil Procedure. As this court has stated, "the fundamental tenor of the Rules is one of liberality rather than technicality, and it creates an important context within which we decide cases under the modern Federal Rules of Civil Procedure." *Miller v. American Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000). Therefore, the Rules require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint. Indeed, this court has made clear that "the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states." *United States v. Louisville & Nashville R.R. Co.*, 221 F.2d 698, 701 (6th Cir. 1955).

The Fourth Circuit recently applied these principles in *Labram v. Havel*, 43 F.3d 918 (4th Cir. 1995). In *Labram*, the plaintiff repeatedly use the label "sexual molestation" to describe one of the claims in her complaint. The district court dismissed the claim on the basis that Nevada law, which was being applied in the case, recognizes no such separate tort action. On appeal, the Fourth Circuit stated that, while the district court's action "may be technically correct," the claim should not have been dismissed "in a proper application of federal 'notice pleading' principles." *Id*. at 920. The court held that the plaintiff had stated a claim for common-law battery and reversed the district court's decision to dismiss the plaintiff's claim on the defendant's FED. R. CIV. P. 12(b)(6) motion. *See ibid*. The court relied on FED. R. CIV. P. 8(a)(2),