**Donald HEAVRIN, Plaintiff,**

v.

**BOEING CAPITAL CORPORATION f/k/a McDonnell Douglas Financial Services Corporation and f/k/a McDonnell Douglas Finance Corporation, McDonnell Douglas Financial Services Corporation, McDonnell Douglas Finance Corporation, BCC Equipment Leasing Corporation, f/k/a MDFC Equipment Leasing Corporation, MDFC Equipment Leasing Corporation, David Nelson and Daniel Anderson, Defendants.**

**Civil Action No. 3:01CV–537–S.**

United States District Court,
W.D. Kentucky,
At Louisville.

Feb. 18, 2003.

Harley N. Blankenship, Louisville, KY, for Plaintiff.

Edward H. Stopher, David William Hemminger, Boehl, Stopher & Graves, Louisville, KY, Robert J. Brown, Wyatt, Tarrant & Combs, Lexington, KY, Mark A. Brand, Monica M. Tynan, Alexander Terras, Quarles & Brady, LLC, Chicago, IL, for Defendants.

## MEMORANDUM OPINION

SIMPSON, District Judge.

This matter is before the court on motion of the defendants, Boeing Capital Corporation, et al ("Boeing"), to dismiss plaintiff Donald Heavrin's ("Heavrin"), second amended and supplemental complaint pursuant to FED.R.CIV.P. 12(b)(6). Defendants allege that Heavrin's claims against them for fraud, perjury, and outrageous conduct fail as a matter of law.

### Background

The history of this matter, and the dealings between the parties, represent a fascinating, detailed, and complicated story. However, for purposes of this opinion, we focus only on the facts, taken as alleged by Heavrin in his complaint, that are relevant to a determination of the issues in this case. For a complete recitation of the facts, see *United States v. Heavrin*, 144 F.Supp.2d 769 (W.D.Ky.2001).

Defendant, Boeing Capital Corporation, formerly known as McDonnell Douglas Finance Corporation ("MDFC"), agreed to loan Triple S Restaurants, Inc. ("TSR") approximately $3.5 million to obtain franchise rights to several Sizzler restaurants. The loan was secured by a $2 million dollar "key man" life insurance policy on each of TSR's principals, Robert E. Harrod ("Harrod") and Michael R. Macatee ("Macatee").

At all times relevant to this matter, Heavrin, Harrod's step son, served as the attorney for TSR.

We are concerned here with the policy on Harrod's life (the "Harrod Policy"). TSR was the owner and beneficiary of the Harrod policy, but executed a collateral assignment to MDFC on November 21, 1991. TSR retained the rights to any policy proceeds remaining after satisfaction of the MDFC debt, and the right to change the beneficiary.

In 1992, facing financial problems, TSR restructured its debts and reduced its monthly payments to its creditors, including MDFC. In 1993, TSR stopped making premium payments on both the Harrod and Macatee policies, and MDFC took over the payments to prevent their lapse. During that time period, disputes developed between TSR and MDFC. Heavrin initiated discussions regarding certain default and lender liability claims that Harrod and TSR may have had against MDFC.

In March of 1994, Harrod was diagnosed with lung cancer and began treatment. Shortly thereafter, TSR transferred ownership of the Harrod policy to the Harrod Trust, an irrevocable trust under which Heavrin and his step sister, Bobbie Bridgers, were co-beneficiaries and co-trustees. On September 2, 1994, Robert Harrod died.

After Harrod's death, Heavrin negotiated a final settlement with MDFC. Under the terms of the final agreement, MDFC agreed to pay the Harrod trust approximately $250,000 of the proceeds of the Harrod policy in release of certain lender liability claims Heavrin contended Harrod and TSR had against MDFC. Jackson National, who wrote the Harrod policy, forwarded a $250,000 check to Heavrin, as trustee of the Harrrod trust, and $1,750,000 to MDFC.

On September 30, 1994, TSR filed a Chapter 11 petition in the U.S. Bankruptcy Court for the Western District of Kentucky. The petition did not disclose the June 1994 transfer of the Harrod policy from TSR to the Harrod trust.

About the same time, MDFC filed a claim against TSR in the bankruptcy court, listing its secured claims without reducing its debt by the funds received from the Harrod policy. In December 1994, the bankruptcy was converted from a Chapter 11 to a Chapter 7. MDFC filed an amended proof of claim, but still failed to mention the funds received from the Harrod policy.

After the U.S. Trustee was unsuccessful in suing MDFC to collect on the Harrod policy, an adversary proceeding was commenced against the Harrod trust, Heavrin, and Bobbie Bridgers to recover the $250,000 received in the settlement of the lender liability claims of Harrod. Throughout the process, the defendants denied that a claim for lender liability ever existed. A criminal complaint was also filed against Heavrin for defrauding the bankruptcy estate of the life insurance proceeds. *U.S. v. Heavrin*, 144 F.Supp.2d 769 (W.D.Ky.2001). During the trial, defendant Nelson denied under oath that a lender liability claim had ever been settled. Heavrin was acquitted of the charges by a written judgment of acquittal.

In this action, Heavrin seeks to recover from the defendants on several grounds. In Count I, he asserts that defendants "failed and refused to give proper credit for debt reduction and amend the false and fraudulent Proofs of Claim in the TSR bankruptcy," and that such action amounts to fraud. In Count II, Heavrin asserts that Defendant David Nelson, individually and on behalf of the corporate defendants, gave testimony in the criminal proceedings

that the $250,000 received by the Harrod trust was not in settlement of the lender liability claims. Heavrin claims that such testimony amounts to perjury. In Count III, Heavrin claims that defendants actions were outrageous, and in Count VI, he asks for punitive damages. We consider each allegation in turn.

### Count I: Fraud

Defendants argue that Heavrin cannot recover against them for filing false and misleading proofs of claim. First, they assert that false bankruptcy claims are governed by 18 U.S.C. § 152(4), which does not create a private cause of action for filing a false proof of claim.

The issue of whether 18 U.S.C. § 152(4) could give rise to a private action was examined in detail by the bankruptcy court in *Clayton v. Raleigh Fed. Sav. Bank,* 194 B.R. 793, 795 (M.D.N.C.1996) using the four-part test of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for determining whether a private right of action may arise from a statute. The court wrote:

> Under *Cort v. Ash,* the four factors for consideration include: (1) whether the plaintiff belongs to the class for whose special benefit the statute was enacted, (2) whether explicit or implicit legislative intent to create such a remedy can be found, (3) whether a private right of action is consistent with the underlying purposes of the legislative scheme, and (4) whether a cause of action is not one traditionally relegated to state law.
>
> Applying the *Cort v. Ash* test, the court finds, as did the court in *In re Terio,* that no private right of action arises from the criminal statute in question. There is no suggestion of a legislative intent to create a private right. The legislative history of 18 U.S.C. § 152 indicates that the provision prohibiting false proofs of claims was enacted to do

away with the previous requirement that proofs of claim be filed under oath. *See* S.R. Doc. No. 1477, reprinted in 1960 U.S.Code Cong. & Admin. News, 2396–2400. The previous oath requirement was found to be burdensome and expensive to creditors. Hence, in order to eliminate the burden and expense of the oath requirement, yet maintain the presumption of validity the proof of claim has always been afforded, Congress made it a crime to file a false proof of claim. *Id.*

> Additionally, implication of a private right of action would not be consistent with the overall legislative scheme with respect to bankruptcy proceedings. As the district court in *In re Terio,* 158 B.R. 907 (S.D.N.Y.1993), observed, the Bankruptcy Code is a highly intricate and reticulated statutory scheme that does not easily lend itself to the creation of new rights and remedies on the part of private parties. The Code creates extensive rights readily available to litigants, and there is no reason to believe that additional rights should be created where none are expressed or clearly implied. Thus, the teachings of *Cort v. Ash* do not support creation of a private right of action under 18 U.S.C. § 152(4).

■ We agree with the reasoning of the *Clayton* court and find that there is no private cause of action under 18 U.S.C. § 152(4) for filing a false proof of claim in a bankruptcy proceeding.

Second, defendants argue that Heavrin fails to state a claim for common law fraud, as he has not satisfied Fed.R.Civ.P. 9(b), which requires that fraud be pled with particularity. "While state law governs the burden of proving fraud at trial in a diversity action in federal court, the procedure for pleading fraud in all diversity suits in federal court is governed by the special pleading requirements of Fed.

R.Civ.P. 9(b)." *Minger v. Green,* 239 F.3d 793, 800 (6th Cir.2001).

The Sixth Circuit has held that the requirements of Fed.R.Civ.P. 9(b) must be read in concert with the general requirements for pleading a case set forth in Fed.R.Civ.P. 8, which requires a "short and plain statement of the claim," and calls for "simple, concise, and direct" allegations. *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir.1988). The court observed that "the purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Id.* Although the Sixth Circuit construes the rule liberally, in order to meet the particularity requirements, at the minimum a plaintiff making a claim for fraud must include the "time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir.1993) (internal citations omitted).

In his second amended and supplemental complaint, in "Count 1: Fraud (False and Misleading Proofs of Claim)" Heavrin sets forth the following allegations:

26. Notwithstanding a ruling and Judgment of the U.S. District Court, Defendants have failed and refused to give proper credit for debt reduction and amend the false and fraudulent Proofs of Claim in the TSR bankruptcy.

27. The actions of defendants and each of them acting in concert, in filing the false and misleading proof of claims [there are two (2)], constitute an active and continuing fraud, in that the representations in the Proof of Claim were false, knowingly false, made with the intent that the representations be relied on, and were in fact relied on, all to the considerable damage to the U.S. Trustee and Plaintiff herein.

28. As a result of the false and fraudulent Proof of Claim by MDFC Leasing and Nelson, plaintiff has suffered the costs, fee and expenses of a wholly unnecessary Adversary Proceeding in Bankruptcy, and has been prosecuted in the Federal Criminal Courts, with the attendant cost, fees and expenses of proper representations and successful defense.

29. Further, plaintiff has suffered loss of income to his practice from time away while tending to the mischief of defendants as well as the time required to prepare and defend against the false claims of defendants.

■ We find that Heavrin has failed to plead his claim for fraud with the particularity required by Fed.R.Civ.P. 9(b). First, the complaint fails to allege who, if anyone, relied on the supposed misrepresentations. Second, the complaint fails to show a causal link between the misrepresentations and the injury that Heavrin alleges. Without such information, defendants are unable to answer Heavrin's claim of fraud in an informed way. Therefore, Count I must be dismissed.

### *Count II: Perjury*

Count II alleges that defendant, David Nelson, acting individually and for and on behalf of the Corporate Defendants, committed perjury by testifying under oath that the $250,000 received by the Harrod Trust as part of the $2 million dollar policy was not a settlement of a lender liability claim. The complaint alleges that as a

result of such perjury, Heavrin suffered costs and expenses of an adversary proceeding in bankruptcy and a criminal prosecution, as well as loss of income from his practice.

■ Heavrin argues that a private cause of action for perjury is permitted under KRS 446.070, which provides that a person injured by violation of a state statute may recover from the offender, and that KRS 523 makes perjury illegal. Even assuming without deciding that Heavrin has a claim against the defendants for committing perjury, they escape liability because of the absolute nature of the judicial privilege. It is well settled that a witness who offers testimony, even if perjured, cannot be liable in a civil action for that testimony, as testimony in a judicial proceeding is privileged as a matter of public policy. *Briscoe v. LaHue*, 460 U.S. 325, 330, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (holding that the judicial privilege bars a private cause of action under 42 U.S.C. § 1983 for perjured testimony of a police officer in court); *Bryant v. Kentucky*, 490 F.2d 1273, 1274 (6th Cir.1974) (holding that a witness before a grand jury who provides false testimony is liable for a criminal action in perjury, but not for any civil action such as malicious prosecution since testimony in a judicial proceeding is privileged as a matter of public policy); *Lawson v. Hensley*, 712 S.W.2d 369, 370 (Ky.Ct.App.1986) (observing that the law in Kentucky is the same as the general rule that a civil action for damages will not lie for perjury).

As the statements made by Nelson in *U.S. v. Heavrin*, 144 F.Supp.2d 769 (W.D.Ky.2001), are privileged, defendants cannot be civilly liable to Heavrin for perjury. Count II fails to state a claim.

### Count III: Outrageous Conduct

Heavrin alleges that the action of the defendants in filing false proofs of claim and making false statements under oath is "outrageous and intolerable in that it offends against generally accepted standards of decency and morality."

Under Kentucky law, the tort of outrageous conduct is available only "to redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees." *Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky.2000). Moreover:

> "It has not been enough that the defendant has acted with an intent which is tortious, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' .... Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and **utterly intolerable in a civilized community.**"

*Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky.1990), *quoting* Restatement (Second) of Torts, § 46 Comment d.

■ Filing false claims in a bankruptcy proceeding and offering false testimony are arguably bad acts, and potentially criminal as well, but they do not rise to the level of going beyond all possible bounds of decency, nor are they behaviors considered utterly intolerable in a civilized community. Kentucky courts reserve the tort of outrageous conduct for action far more extreme than Heavrin complains of here. Therefore, we find that he has failed to state a claim for outrageous conduct under Count III.

### Count VI: Punitive Damages

As Heavrin has failed to state a claim in Counts I, II, and III of his complaint, Count VI, seeking compensatory and punitive damages based on these counts, must also be dismissed.

For the foregoing reasons, **IT IS HEREBY ORDERED AND AD-JUDGED** that the motion of the defendants to dismiss the plaintiff's second amended and supplemental complaint is **GRANTED.**

There being no just reason for delay in its entry, this is a final order.