**Jan DOE, Plaintiff,**

v.

**Lloyd Monk PATTON,
et al, Defendants.**

**No. CIV.A. 7:01–278–DCR.**

United States District Court,
E.D. Kentucky,
Pikeville Division.

March 23, 2005.

Ned B. Pillersdorf, John Rosenburg, Pillersdorf, Derossett & Lane Prestonsburg, KY, for plaintiff.

Jonathan C. Shaw, Michael J. Schmitt, Porter, Schmitt, Jones & Banks, Paintsville, KY, for defendant Magoffin County Fiscal Court and Paul Hudson Salyer, as County Judge Executive.

Jason F. Williams, Leroy Arlis Gilbert, Jr., Farmer, Kelley, Brown & Williams, London, KY, for defendant Lloyd Patton.

## MEMORANDUM OPINION AND ORDER

REEVES, District Judge.

This matter is pending for consideration of Jan Doe's motion for relief from judgment pursuant to Rule 60(B)(2) & (3) of the Federal Rules of Civil Procedure. [Record No. 136] Previously, in ruling on motions for summary judgment, this Court dismissed the official capacity claims against Lloyd Patton and dismissed all

claims against Paul Salyer and Magoffin County. [Record No. 122] The Court denied a motion to reconsider and Doe thereafter filed a notice of appeal. [Record No. 130] Following the notice of appeal, Doe and Patton provided an agreed notice of dismissal, indicating that all claims against ·Patton had been settled. [Record No. 131] The Court then entered a final judgment in the case. [Record No. 133] Doe thereafter filed a second notice of appeal. [Record No. 134]

Doe now claims that the judgment should be set aside due to testimony elicited during Patton's criminal trial, which took place *after* entry of judgment in this action. The Court has reviewed the transcripts of Marcella Salyer's deposition and trial testimony, as well as a videotape of her trial testimony. For the reasons discussed herein, the Court will deny the motion.

## I. BACKGROUND ·

In July 2001, Doe, then a minor, was ordered to perform community service at the Magoffin County Courthouse. Lloyd Monk Patton was the janitor at the courthouse. He was hired to that position by Paul Salyer. On July 11, 2001, Patton raped Doe in the jury room of the courthouse, forming the basis for Doe's complaint. After judgment was entered in this case, Patton was convicted of first-degree rape for his assault on Doe. *See* Lee Mueller, *Courthouse ex-janitor Convicted; He Raped Girl, 16, in Locked Jury Room in 2001, Jurors Decide*, Lexington Herald–Leader, Feb. 9, 2005, at BI.[1] The jury recommended the minimum ten-year sentence.

## II. JURISDICTION

On January 20, 2005, after the Court granted summary judgment to Magoffin County, Doe filed a notice of appeal to the Sixth Circuit Court of Appeals. [Record No. 130] That appeal was docketed by the Sixth Circuit on January 27, 2005. (Case # 05–5162 Docket Sheet) It was not until February 3, however, that this Court entered its final judgment.[2] [Record No. 133] Thus, Doe's initial appeal was premature. She corrected this oversight by filing a second notice of appeal on February 22. [Record No. 134] (Case # 05–5304 Docket Sheet.)[3]

Upon reviewing Doe's motion, the Court was concerned whether it retained the jurisdiction to consider the motion, given that a notice of appeal had been filed on two separate occasions. Therefore, the Court directed the parties to relevant cases on this issue and ordered further briefing, given the contradictory positions adopted in several Sixth Circuit cases relating to a district court's post-appeal jurisdiction to consider Rule 60 motions. The Court directed the parties to the following relevant authorities: *LSJ Inv. Co., Inc. v. O.L.D., Inc.*, 167 F.3d 320, 324 (6th Cir.1999); *S.E.C. v. Johnston*, 143 F.3d 260, 263 (6th Cir.1998); *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 327 (6th Cir. 1993); *First Nat. Bank of Salem, Ohio v.*

---

1. Patton's criminal trial lingered in a state of suspended animation for nearly three and a half years. Officials from Magoffin County were unable to fully account for the inexplicable delay in this straight-forward rape case.

2. Although the Court had granted summary judgment to Magoffin County, it had not granted summary judgment on Doe's personal claims against Patton. It was not until the parties stipulated to dismissal of these claims on January 27, 2003 that all claims against all parties had been adjudicated. *See* Fed. R.Civ. P. 54(b).

3. Doe's two appeals have been consolidated by the Sixth Circuit for purposes of briefing. Doe has indicated that if she is unsuccessful in her current motion, she may file a third appeal. [Record No. 141, p. 2]

*Hirsch,* 535 F.2d 343, 345–46 (6th Cir. 1976); *Flynt v. Brownfield, Bowen & Bally,* 726 F.Supp. 1106, 1108–1110 (S.D.Ohio 1989); 12 James Wm. Moore *et al.,* Moore's Federal Practice § 60.67 (3d ed.2004); 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2873 (2d ed.1995).

In *Herring v. Kennedy–Herring Hardware Co.,* 261 F.2d 202 (6th Cir.1958), the Sixth Circuit set forth the following procedure for a district court to follow when considering a motion filed pursuant to Rule 59 or Rule 60 *after* the docketing of an appeal:

> The authority to grant a new trial under Rule 59(a) or to relieve a party from a final judgment under Rule 60(b), Rules of Civil Procedure, rests with the District Court, not the Court of Appeals. In accordance with the procedure in an analogous situation, approved in *Smith v. Pollin,* 90 U.S.App.D.C. 178, 194 F.2d 349 (DC Cir.1952); *see also: Metcalf v. United States,* 195 F.2d 213, 218 (6th Cir.1952); *Hamel v. United States,* 135 F.2d 969 (6th Cir.1943); appellant's motion seeking a new trial or relief from final judgment under either of those rules should be addressed to the District Court. If, after a full and careful investigation of the problem, the District Judge is of the opinion that a fair and satisfactory record can be prepared for the purpose of a review of this case by the Court of Appeals, or if the failure to prepare such a record is due to the inexcusable neglect of the appellant to preserve his rights in the matter or to his failure or refusal to fully cooperate, he will so state and the pending motion for a remand will be overruled. If, without fault on the part of the appellant, or because of the failure of the appellee to fully cooperate in the matter, the District Judge is of the opinion that a record cannot be prepared and presented to the Court of Appeals which will fairly and satisfactorily enable the Court to review the judgment entered in this action and that the appellant should be granted a new trial, he will so certify to this Court and the pending motion for a remand will be sustained for action by the District Judge on the motion under consideration by him.

*Id.* at 203–204. This method was later reiterated in *Hirsch.*

Two later Sixth Circuit cases—*Pittock* and *Johnston,* however, suggested that a district court could only entertain a post-appeal Rule 60 motion "when the appeal is untimely, presents issues that the appellate court had previously decided in the same case, or is from a non-final, non-appealable order." *Pittock,* 8 F.3d at 327; *accord Johnston,* 143 F.3d at 263. Regardless, this Court must employ the procedure outlined in *Herring* because one panel of the Sixth Circuit "cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting *en banc* overrules the prior decision." *Salmi v. Sec'y of Health & Human Services,* 774 F.2d 685, 689 (6th Cir.1985). Thus, the Court will consider the merits of Doe's motion.

## III. ANALYSIS

At the time Patton raped Doe, Marcella Salyer was Deputy Judge Executive of Magoffin County, serving as a subordinate to her husband, Paul Salyer, the Judge Executive. During a discovery deposition in the civil case, Marcella Salyer was asked about what she knew of the circumstances surrounding the rape. She testified that she had asked Patton about what occurred, that he denied raping Doe, and that she ended her investigation upon this denial,

leaving Patton in his position as courthouse janitor. (Salyer Depo. at 11–12.)

During the criminal trial, Mrs. Salyer was called as a witness for Patton. She claimed she had observed Doe in Patton's presence several days before the rape. She testified that she was concerned because Doe, then 16, was wearing "provocative clothing," including shorts that were "very, very short" and "very revealing." She further testified that she "was in a very provocative position," sitting in a chair "with one leg on the floor and the right leg up on the desk." (Salyer Testimony at 6.) Although Mrs. Salyer was "very concerned," she did nothing because "she was busy." (Salyer Testimony at 10.) Doe also notes that Salyer referred to her as a "little girl," even though the County maintained during the civil proceedings that it was not aware that Doe was supervising juveniles. (Salyer Testimony at 10.) Doe notes that during Salyer's civil deposition, she failed to discuss this earlier encounter between Patton and Doe that left her "very concerned." Doe argues that Salyer should have discussed this encounter during her civil deposition when asked about her investigation into Doe's rape allegation. She claims that this "new evidence" bolsters her claim that the County should have been aware of possible sexual misconduct by Patton.

Although Salyer's prior encounter with Doe is another example of questionable judgment on the part of Magoffin County in the handling of Patton's hiring and supervision, it does not alter this court's analysis that: (1) Doe cannot maintain a Section 1983 action against the County or Paul Salyer because there is no evidence that the County had in place a policy that caused Doe's constitutional violation; (2) there was no evidence making it "plainly obvious" that Patton would rape Doe; (3) Magoffin County is entitled to sovereign immunity for the state law claims of negligent supervision and negligent hiring; (4) Paul Salyer was entitled to absolute official immunity for claims brought against him in his official capacity; (5) Paul Salyer was entitled to qualified official immunity for claims brought against him in his individual capacity; and (6) there was no waiver of Salyer's qualified official immunity because there was no evidence that Salyer had negligently performed a ministerial duty, or acted in "bad faith," in his supervision and hiring of Patton.

### A. 1983 Claim

■ In granting summary judgment on the Section 1983 claim, this Court quoted a recent Sixth Circuit case which held that: [m]unicipalities and other bodies of local government may be sued pursuant to 42 U.S.C. § 1983 if they are "alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (citing *Monell v. Dep't of Soc. Services of the City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Section 1983 also "authorizes suit 'for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.'" *Id.* (citing *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018). Although a § 1983 plaintiff might not be able to demonstrate that a written policy exists, he or she "may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018. (citation and quotation marks omitted).

This court has explained that a "custom" for the purposes of § 1983 liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of 'law' must include deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a 'custom' is a 'legal institution' not memorialized by written law. *Doe,* 103 F.3d at 507–508 (citations and quotation marks omitted). Not only must the plaintiffs show that the City and County as entities caused the constitutional violation, but they "must· also show a direct causal link between the custom and the constitutional deprivation." *Id.* at 508. "This requirement is necessary to avoid de facto *respondeat superior* liability explicitly prohibited by *Monell.*" *Id.*

*Cash v. Hamilton County Dept. of Adult Probation,* 388 F.3d 539, 542–43 (6th Cir. 2004). The Court noted that there was no evidence of any official policy, or even a "widespread practice," that resulted in the constitutional tort against Doe.

The Court also relied heavily upon the Supreme Court's opinion in *Bd. of County Comm's of Bryan County, Ok. v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). In affirming the position that county and municipal governments cannot be held vicariously liable for the tort of another, the Supreme Court set an extremely high bar for a plaintiff seeking to demonstrate that a single action of the county can rise to the level of a Section 1983 violation. In the context of a negligent hiring claim, the Court held that it must have been "plainly obvious" to the official defendant that the government employee would commit the specific constitutional violation which the tortfeasor is alleged to have committed. The Court noted that:

a finding of culpability simply cannot depend on the mere probability that any [employee] inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* [employee] was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.

*Id.* at 412, 117 S.Ct. 1382 (emphasis in original). The Court held that it was not "plainly obvious" to the County or Paul Salyer that Doe was likely to commit the particular tort, *i.e.,* rape.

Mrs. Salyer's new testimony does not alter this analysis. The testimony suggests that she was concerned about *Doe's* dress and conduct, rather than *Patton's.* There is nothing to suggest that it was "plainly obvious" to the County that Patton would forcibly rape Doe. This new testimony does not meet the very high burden established by *Brown.* Further, "[o]n the issue of § 1983 liability of supervisory personnel, ... a supervisory official's failure to supervise, control, or train the offending individual is not actionable, unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir.1988) (citation omitted).

### B.   *State Claims*

■ This Court previously held that Magoffin County was entitled to sovereign immunity for the state law claims, relying upon *Schwindel v. Meade County,* 113 S.W.3d 159, 163 (Ky.2003) and *Criswell v. Wayne County, Ky.,* 165 F.3d 26 (Table), 1998 WL 598739 (6th Cir.1998). In addition, the Court found that Salyer was entitled to absolute official immunity, in his official capacity, ·and qualified official im-

munity, in his individual capacity, relying upon *Yanero v. Davis,* 65 S.W.3d 510, 522 (Ky.2001).

Marcella Salyer's trial testimony does not alter any of this analysis. The only possible argument Doe can make is that her testimony somehow relates to the "negligent performance of ministerial duties" or "non-good faith performance of discretionary duties" exceptions to the invocation of qualified official immunity.

In delineating the distinction between discretionary and ministerial duties, the Sixth Circuit and the Kentucky Supreme Court have recognized that:

> [t]he essence of a discretionary power is that the person or persons exercising it may choose which of several courses will be followed. The power to exercise an honest discretion necessarily includes the power to make an honest mistake of judgment.... Discretionary ... duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and *discretion in determining ... whether the act shall be done or the course pursued.*

*Minger v. Green,* 239 F.3d 793, 798 n. 2 (6th Cir.2001) (quoting *Franklin County v. Malone,* 957 S.W.2d 195, 201 (Ky.1997))[4] (emphasis added). As the *Yanero* Court held, discretionary functions are those that "involve the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Yanero,* 65 S.W.3d at 522 (citation omitted). Conversely, the Second Restatement describes ministerial functions in the following manner:

> If an act of the official involves less in the way of personal decision or judgment or the matter for which judgment is required has little bearing of importance upon the validity of the act, there is no immunity or privilege. These acts are commonly called "ministerial," or

sometimes "operational." The distinction is always one of degree. Ministerial acts are those done by officers and employees who are required to carry out the orders of others or to administer the law with little choice as to when, where, how or under what circumstances their acts are to be done. Examples of acts held to be ministerial under ordinary circumstances are the preparation of ballots, the registration of voters, the recording of documents and filing of papers, the care of prisoners, the driving of vehicles, the repair of highways, the collection of taxes, the taking of acknowledgments and the dipping of sheep. Yet under particular fact circumstances each of them may be held to involve the exercise of discretionary decision.

Restatement (Second) of Torts § 895D cmt. h (1979). As the Kentucky Supreme Court explained, a ministerial duty "requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Yanero,* 65 S.W.3d at 522.

Nothing about Salyer's testimony relates to a ministerial duty. Doe has not produced any evidence suggesting that, upon seeing Doe in suggestive clothing and posture, Salyer was required to do anything. Rather, it appears that Salyer's response to this situation was a discretionary decision. In addition, *Marcella* Salyer was not a defendant in this action.

Determining whether a government official was performing a discretionary act, however, does not end the qualified immunity analysis. After concluding that an official's decisions are discretionary in nature, courts engage in a three-step inquiry for claims of qualified immunity:

---

**4.** *Malone* was overruled on other grounds by *Yanero.*

First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir.2003) (quotation omitted). Kentucky courts refer to this analysis as a test of whether the defendant acted in "good faith." *Yanero,* 65 S.W.3d at 523.

Nothing from Marcella Salyer's testimony suggests that a constitutional violation was committed by Magoffin County or Paul Salyer, such that immunity might not apply. Thus, her testimony does not have any bearing on this Court's previous immunity analysis.

Finally, the Court directs the parties to a recent opinion from the Kentucky Court of Appeals which supports this Court's conclusion. In *Autry v. Western Kentucky Univ.,* —— S.W.3d ——, 2005 WL 497193 (Ky.App.2005), the court dealt with a claim brought by the estate of a deceased female who was raped, burned and murdered in her dorm room at Western Kentucky University. The estate sued, *inter alia,* the university and the employees of the university who were responsible for enforcing university policies concerning dorm safety. These policies required "that outside doors were to be locked and all non-resident guests were required to check-in with the desk clerk, leave identification with the desk clerk, and be escorted by a resident to their dorm." *Id.* at ——, 2005 WL 497193 *1. The estate sued the deceased's residence hall director, the assistant hall director, her two RA's, and the desk clerk.

The Kentucky Court of Appeals concluded that the university was entitled to governmental immunity and that the dorm employees responsible for implementation of safety policies were entitled to official immunity, noting that "since WKU and its employees in their official capacity are immune from liability, discovery as to [the employees'] possible negligence in this matter is irrelevant." *Id.* at ——, 2005 WL 497193, *5, n. 40. Further, the court noted that "as a state agency with governmental immunity, WKU cannot be held vicariously liable for any alleged negligence of its employees." *Id.* at ——, 2005 WL 497193 *5 n. 38.

### IV.  CONCLUSION

Accordingly, for the reasons discussed herein, it is **ORDERED** that Doe's motion for relief from judgment [Record No. 136] is **DENIED**. The Clerk of the Court is directed to forward a copy of this Order to the Sixth Circuit Court of Appeals for filing in Sixth Circuit case numbers 05–5162 and 05–5304.